Judge Mills
delivered the opinion.
This is a writ of error brought to reverse a judgment in ejectment, rendered in favor of the lessor of the plaintiff in the court below.
The errors assigned, alledge the declaration is insufficient. On this point we shall not dwell, further than to remark that an issue is joined, and after that, a statute in force forbids such exceptions either to form or substance.
There was a trial had in the court where the cause was first commenced, and a verdict was found for the defendants below, which the court set aside and awarded a new trial, and an exception was taken to that opinion, and it is now relied on as error.
The plaintiff below, on that trial, proved' that a patent covered the residence of the tenants, and exhibited a deed from the patentee to himself, while the land was a forest and before the settlement of the tenants. This entitled him to a verdict, unless a valid defence was exhibited.— The tenants gave in evidence a patent posterior in date to that set up by the lessor of the plaintiff; but this patent and even the survey on which it was founded, was not twenty years old at the commencement of suit. And altho’ the tenants proved Ibeir entry upwards of twenty years before suit commenced, and some improvement made, yet they exhibited no demarcation either by entry, survey, or patent, so that there was nothing by which their possession could be extended beyond their actual close, or by *546 which it coalá be limited. And they had proceeded tor extend their actual enclosures within the twenty years.— Under such circumstances the jury could not be warranted by the evidence, in finding their verdict for the tenants. Such a verdict admitted of no apology, and the court which presided over the trial respected the law as well as justice of the case, in granting a new trial, when appealed to for that purpose.
in^fronTthe bar and turning no disc?’. ar6d RUhéTend the term and a venire de er ° 13 Pr°P"
An informa! chanle of 3 venue does not operate a anoe.'ltmU"
Another jury was empannelled ata subsequent term, a^ter l!earing the evidence retired to consider of their verdict, and returned no more ; nor is there any further n°t'ce tltena upon tlie record The cause vvas then Ofmoved, by a change of venue, from the Madison to the Clarke circuit court, on the petition of the lessor of the plaintiff. From thence it was remanded to the Madison circuit, on the motion of the tenants, on account of some 'rregu!arity ‘n removal. It was then moved, by a subsequent change of venue on the application of the lessor of the plaintiff, to the Garrard circuit court; from whence it vvas again remanded, on motion of the tenants, back to Madison. It was then moved the third time from Madison to the Jessamine circuit, on the petition of the lessor of the plaintiff, where it was tried and this verdict and judgment rendered for the plaintiff below. It is now contended that as the removals to Clarke and Gerrard were erroneous, they or one of them amounted to a discontinuance of the cause, and (bat it ought to have been dismissed. We cannot perceive anv principle which would terminate the cause by these removals. The lessor of the , plaintiff shewed no intention of discontinuing ; but industriously availed himself of the priviiedge allowed him by law of changing t.he venue for his own security. The tenants, by their own conduct, procured the cause to be sent back to the county, where there was no doubt in the jurisdiction, and where they were legally yoked or opposed to the plaintiff in the controversy. Yet where the cause is returned then on their motion and not before, they question the existence of the cause. This they ought not to be permitted to do. Nor are we prepared to say that erroneous proceedings in removing a cause, by order of the proper organ of the law, ought ever to be held a discontinuance.
It was relied an in arrest of judgment in the court below, and is assigned for error in this court, that no further *547 proceedings could be had till tbe return of the jury, last retired ¡d Madison, and that they ought to be stiil considered as deliberating on the cause.
⅛⅛,, a of 8Rmo' a in abate-at¡JLei,^sílgUl¡¡| gPS,eCOn-yenienthour,
It ⅛ t es> sential to the validity of a ⅛^"patentee sho’ld accept it is also v.allf un<^sr seat.
If the parly who has made this question, was serious in his objection in the court below, it will not derogate perhaps too far from the gravity of the bench, to say that he Blight soon have relieved this difficulty, by applying to that court to call in this jury which had remained out for months, and enquired after the result of their tedious deliberations. Ic England where the court was always presumed to be open for many purposes in the presence of the judge, and in his travels from county to county to bear trials and take in verdicts at nisi prim, be was considered as having, at all moments, the powers of a nisiprius court, be might reta¡n and keep the jury together, and take them with him till they responded to the issue. But here, where each circuit court is local, and the judicial acts of the judge, except in a few cases, are confined to the judicial days allowed by law — when tbe court ends, the jury are discharged by operation of law, and there is no provision for their confinement from term to term, and it would be an extraordinary consequence of their dispersion, if they should be allowed to carry the cause with them. This ©bjection is therefore entitled to no weight.
Just before the trial in the Jessamine circuit court, tbe tenants made another motion to remand the cause to ison. But tbe court refused to hear this motion, and conceive properly. At a former term the lessor of plaintiff appeared prepared for trial, and the tenants ed cause and procured a continuance at their costs, and the hour of trial, after the witnesses had been procured considerable expense incurred, they urged the cause to be remanded. All such motions ought to be held to the same strictness, in point of time, as pleas in abatement, and ought to be made at the first convenient hour. After the party has given his adversary reason to believe, that be intends to meet him on the merits, he ought not to be permitted to urge an application to remand.
On the trial tbe tenants objected to the reading of the patent in evidence, set up by tbe lessor of tbe plaintiff, the name of David Tanner, because there was no evidence that Tanner had accepted it, and because it was the lesser seal of the commonwealth of Virginia. These exceptions are nut entitled to a serious reply. We do not *548 admit that patents, made out by the agents of government, am] which completely pass the title when the last act of these agents is completed require delivery and accept anee to make them operative ; or that the lesser seal of Viigmia is not equally the seal of that state with the greater one.
A copy of aconveyance on he toss of original
The same reply may be given to the motion of the ten* ants based on the same grounds, and because the patentee was shewn to be out of ti e commonwealth at Jhe date of the patent, aft ct the lessor ol the plaint iff had giver, in tvi-dence a deed from the patentee and proved that the ttn-ants resided within tl. Nor is the objection to the admis-a coi ? ^,e deed of the lessor .of the plaintiff’eu-filled to more weight, 'I he deed was recorded in due time, on proper proofs, and out of abundant caution the lessor of the plain■ iff' made oath to the loss cf the original.
The pa'ent to Dt.vid'l am er, set up by the lessor of the: plaintiff, was dated on the 2l-tb September, 1786. His deed To the lessor of the plaintiff was dat'd on the 29th June, 1791, and expresses to be “between David 'Fan-ner. of the province oj Louisiana and district oj batches, of the one part, and Green Clay, of Madison and commonwealth of Virginia, o! the othei part.” It was proved that Tanner was born in North Carolina, and resided there till the year 1780. That he was a whig in the American revolution — that in 1780 he came to Kentucky, where he resided till 1784 or 1785, when he removed with his family to Natchtz, or its neighborhood, avowing his intention to settle there with his family, before he left Kentucky, at d that he had not since been in Kentucky to the knowledge of any of the witnesses
The lessor of the plaintiff moved the court to instruct the jury, that if they found that Tanner, the patentee, bad ever been a citizen of the United S ates, he could not forfeit that citizenship, unless by going before a justice of the peace, and declaring bis intention to expatriate himself in the manner pointed out by the statute of Virginia.
The court did not instruct the jury in as broad, abstract terms as asked, but instructed them, that if they found that Tanner was ever a citizen of the United States, he could not forfeit that citizenship so as to be incapable to re-«eit>e a title to land by grants or so as to be incapable of conveying a title vested in him while a citizen, unless he had expatriated himself in the manner pointed out bv the statute of Virginia, or by an act of high treason. The cor- *549 redness of this instruction i» now presented for tbe deci.sion of this court.
An American citizen removing'to the domin-anw hoidhg or sel!ins lands
The counsel for the plaintiff appears to have attempted (o impose on the court the litigated question, whether, under our government, a citizen has. a natural right to expatriate himself, without the control of bis government, or whether the government must grant him. permission and prescribe tbe mode, before he can do so. The court, however, has evaded the question, and that with such propriety that there is no necessity for this court to enter into For, suppose it to be conceded, that Tanner himself by his removal, wbat would become of his which he had acquired while a citizen, and to which, on his abandonment of his country, he had a complete We cao expect no answer to this question from British authorities. For that country has so pertinaciously adhered to the doctrine, that no subject can expatriate himself;, that no provision exists, in her common or statute laws disposing of the estate of an expatriated person. To whom the estate passes, and how it is to be disposed of, when granted 10 an alien, is provided for. But the disposition of it when held by a legitimate subject, before and at the time he became an alien, is not provided for. But be the right of Virginia what: it may, with regard to preventing her citizens from becoming aliens, she no doubt possessed ⅛⅝ power of prescribing vvba,t should be the unequivocal evidence of their becoming so. This she did do by the act of 1783, 2 Lilt. 380. As the common law which she derived from England, made no provision for the forfeiture of estates formerly held, on becoming an aben, the legislature alone could supply the casus omissus. On this subject she said nothing; and we cannot suppose, notwithstanding ia the same act she declares the right of expatriation to be a natural right, that she intended that the estate of her citizens, who changed their residence to the dominions of a friendly poweri as Tanner did, without pursuing the requisitions of the statute, should be forfeited. She only attempted to forfeit the estate of those that went to her enemies. Hence it may be doubted, whether, if Taooer bad pursued the requisitions of the act, his estate held formerly, while a,citizen, would have been forfeited when the legislature made a declaration to that effect, so that be could not convey it. The court below, therefore, could not have, erred in deciding that the evidence of iris, expatriation, of *550 such ambiguous character, did not disqualify him to convey' his title, when, if evidence of tbe conclusive character pointed out by law had been adduced, his disqualification to do the same act would have been questionable. For whatever may be the power of the American governments with regard to retaining tbe persons of their citizens at all times, and of reclaiming them at all places, no doubt can be entertained of their power with regard to the lands of tbeir citizens vested while such, and claimed by them after expatriation. Government may permit such titles to be held and conveyed after expatriation, or direct them to be taken away; and until sbe does the latter, it is doubtful whether power can exist in a court to forfeit them. The same doctrines are intimated by tbe supreme court of the United States in the case of Talbot vs. Janson, 3 Dal. 133. And in the case of M’Ilvain vs. Coxe, 2 Cranch, 230, and 4 Cranch, 209, a person born in New-Jersey, previous to tbe revolution, who, in 1717, joined tbe British army and adhered to that government ever sinee, and resided there, receiving compensation for. his services as a suffering refugee. was allowed to take and hold lands in that state, by a descent cast, long since bis defection from the government, which is a much stronger case than the present
Hearsay evidence, except as to pedigree, or the declarations of a deceased parent as to the age of a child, is inadmissable and its reception will not be cured by the subsequent produc tion of competent evidence to the ssme fact.
One other question made by the assignment of error, we are compelled to notice. The plaintiff asked one of his witnesses if it was not reputed in 1184 and 1785, thatTan-ner, the patentee, was a native of North Carolina? This question was objected to, and it was insisted that tbe witness should be allowed to detail his own knowledge only on this subject, and not report. The objection was overruled, and tbe witness directed to answer the question. This decision cannot be supported by authority. Hearsay-evidence is admissible to prove pedigree, and tbe declarations of a deceased parent have been admitted to prove the time of a child’s birth; but is rejected when offered to prove the place. Phil. Ev 195. Much less, then, is tbe common report of those, which may not have the means of knowing, admissible, to prove the place of nativity.
But after this hearsay evidence was admitted, the defendant in error produced competent evidence of tbe same fact. Hence the question arises, when improper evidence of a material fact is admitted, and the record shews that after-wards proper evidence of the same matter was introduced, ought the judgment on account of this error to be reversed *551 ü-or ought the error to be considered as corrected by subsequent testimony? If the proper evidence produced, after tbe improper, was of a conclusive character, the error perhaps might be cured. But when the proper evidence consists in the swearing of witnesses, as in this case, and is from its nature construable in many ways, we cannot say that the jury was guided by the proper testimony alone, or that which was improper; or whether they might not consider the former kind so stronglv corroborated by tbe latter, as to be induced to believe tbe fact, when without the improper evidence, they might even from the manner itself in which the witness detailed it, have doubted or disbelieved that of a competent character. For these reasons we conceive this error must be held fatal to the judgment, however much we may regret disturbing a verdict in a cause so long pending, and which, in all other respects, seems to have been fairly and correctly decided.
The judgment must be reversed with costs, and new proceedings directed consistent with this opinion.