*261 Opinion of the Court.
THIS is a writ of error brought to reverse a judgment in ejectment rendered in favor of the lessor of the plaintiff.
The errors assigned, allege that the declaration is insufficient. On this point, we shall not dwell, further than to remark, that an issue is joined ; and after that, a statute in force forbids such exceptions, either to form or substance.
There was a trial in the court where the suit was first commenced, and a verdict was found for the defendants below, which the court set aside, and awarded a new trial; and an exception was taken to that opinion, and is now relied on as error.
1. The plaintiff below, on that trial, proved that a patent covered the residence of the tenants, and exhibited a deed from the patentee to himself, while the land was a forest and before the settlement of the tenants. This entitled him to a verdict, unless a valid defence was exhibited. The tenants gave in evidence a patent posterior in date to that set up by the lessor of the plaintiff ; but this patent, and even the survey on which it was founded, was not twenty years old at the commencement of the suit; and although the tenants proved their entry upwards of twenty years before suit *262 commenced, and some improvement made, yet they exhibited no demarcation, either by entry, survey or patent; so that there was nothing by which their possession could be extended beyond their actual close, or by which it could be limited, and they had proceeded to extend their actual enclosures within the twenty years. Under such circumstances, the jury could not be warranted by the evidence, in finding their verdict for the tenants. Such a verdict admitted of no apology; and the court which presided over the trial, respected the law, as well as the justice of the case, granting a new trial, when applied to for that purpose.
It seems, that erroneous proceedings, in removing a cause, under the laws authorizing a change of venue, will, in no case, produce a discontinuance.
2. Another jury was empannelled, at a subsequent term, and after hearing the evidence, retired to consider of their verdict, and returned no more; nor is there any further notice of them upon the record. The cause was then removed by change of venue, from the Madison to the Clarke circuit court, on the petition of the lessor of the plaintiff. From thence it was remanded to the Madison circuit court, on the motion of the tenants, on account of some irregularity in the removal. It was then removed, by a subsequent change of venue, on the application of the lessor of the plaintiff, to the Garrard circuit court; from whence it was again removed, on motion of the tenants, back to Madison. It was then removed a third time from Madison to the Jessamine circuit court, on the petition of the lessor of the plaintiff, where it was tried, and this verdict and judgment rendered for the plaintiff below.
It is now contended, that as the removals to Clarke and Garrard were erroneous, they, or one of them, amount to a discontinuance of the cause, and that it ought to have been dismissed.
We cannot perceive any principle, which would terminate the cause by these removals. The lessor of the plaintiff showed no intention of discontinuing; but industriously avails himself of the privilege allowed him by law, of changing the venue for his own, security. The tenants, by their own conduct, procured the cause to be sent back to the county where there was no doubt of the jurisdiction, and where they were legally yoked, as opposed to the plaintiff in controversy ; yet, when the cause is returned there, and not, before, they question the existence of the cause. This they ought not to be permitted to do; nor are we pre *263 pared to say, that erroneous proceedings in removing a cause by order of the proper organ of the law, ought ever to be held a discontinuance.
Where a jury are empannelled and sworn in cause, and do not return with a verdict before the end of the term, the termination of the court is, by operation of law, a discharge of the jury and another may be empannelled at the next term.
A motion to remand a cause which has been removed by change of venue, ought to be held in he same strictness, in point of time as a pleas in abatement.
3. It was relied on, in arrest of judgment in the court below, and is assigned for error in this court, that no further proceedings could be had, until the return of the jury who last retired in Madison, and that they ought to be still considered as deliberating on the Cause.
If the party who has made this question, was serious in his objection in the court below, it will not, perhaps, derogate too much from the dignity of the bench to say, that he might soon have removed this difficulty, by applying to that court to call in the jury winch had remained out for months, and enquired after the result of their tedious deliberations. In England, where the court was presumed to be open for many purposes, in the presence of the judge, and in his travels from county to county, to hear trials and take in verdicts at nisi prius, he was considered as having, at all moments, the powers of a nisi prius court. He might retain and keep the jury together, and fake them with him, until they responded to the issue ; but here, where each circuit courtis local, and the judicial acts of the judge, except in a few cases, are confined to the judicial days allowed by law, when the term ends, the jury are discharged by operation of law, and there is no provision for their confinement from term to term, and it would be an extraordinary consequence of their dispersion, if they should be allowed to carry the cause with them. This objection, therefore, is entitled to no weight.
4. Just before the trial of the cause, in the Jessamine circuit court, the tenants made another motion to remand the cause to Madison ; but the court refused to hear this motion, and, we conceive, properly. At a former term, the lessor of the plaintiff appeared, prepared for trial, and the tenants showed cause and procured a continuance, at their costs; and at the hour of trial, after the witnesses had been procured, and considerable expence incurred, they urged the cause to be remanded. All such motions ought to be held to the same strictness, in point of time, as pleas in abatement, and ought to be made at the first convenient, hour. After the party has given his adversary reason to bel *264 ieve, that he intends to meet him on the merits, he ought not to be permitted to urge an application to remand.
Neither the delivery nor the acceptance by the grantee of a patent, is necessary to the consummation of title.
5. On the trial, the tenants objected to reading the patent in evidence, set up by the lessor of the plaintiff, in the name of David Tanner; because there was no evidence that Tanner had accepted, and because it was under the lesser seal of the commonwealth of Virginia. These exceptions are not entitled to a serious reply. We do not admit, that patents made out by agents of the government, and which completely pass the title, when the last act of these agents is completed, require delivery and acceptance to make them operative ; or, that the lesser seal of Virginia is not equally the seal of that state, as the greater.
The same reply may be given, to the motion of the tenants, based on the same grounds; and because the patentee was shown to be out of the commonwealth at the date of the patent, after the lessor of the plaintiff had given in evidence a deed from the patentee, and proved that the tenants resided within it. Nor is the objection to the admission of a copy of the deed of the lessor of the plaintiff, entitled to more weight. The deed was recorded in due time, on proper proof, and out of abundant caution, the lessor of the plaintiff made oath to the loss of the original.
The patent to David Tanner, set up by the lessor of the plaintiff, was dated on the 20th of September, 1780. His deed to the lessor of the plaintiff, was dated the 29th of June, 1791, and expresses to be between David Tanner, of the province of Louisiana and District of Natchez, of the one part, and Green Clay, of Madison county and commonwealth of Virginia, of the other part. It was proved, that Tanner was born in North Carolina, and resided there until the year 1780; that he was a whig in the American revolution ; that in 1780, he came to Kentucky, where he resided until the year 1784 or 1785, when he removed with his family to Natchez or its neighborhood, avowing his intention to settle there with his family before he left Kentucky; and that he had not since been in Kentucky, to the knowledge of any of the witnesses.
6. The lessor of the plaintiff moved the court to instruct the jury, that if they found that Tanner, patentee, had ever been a citizen of the United States, he *265 could not forfeit his citizenship, unless by going before a justice of the peace and declaring his intention to expatriate himself, in the manner pointed out by statute of Virginia.
A citizen of Virginia, by removing into spanish dominions in the year 1784 or 1785 with an avowed intention of permanently residing there neither forfeited his right to lands in Virginia, nor disqualified himself from transfferring a good title in such lands to another citizen of Virginia.
1 Dig. 548.
The court did not instruct the jury in as broad, abstract terms as asked; but instructed them, if they found that Tanner was ever a citizen of the United States, he could not forfeit that citizenship, so as to be incapable to receive a title to land by grant, or so as to be incapable of conveying a title vested in him while a citizen, unless he had expatriated himself in the manner pointed out by the statute of Virginia, or by an act of high treason. The correctness of this instruction is now presented for the decision of this court.
The counsel for the plaintiff appears to have imposted on the court, the litigated question, whether, under our government, a citizen has a right to expatriate himself without the control his government, or whether the government must grant him the permission, and furnish the mode, before he can do so. The court below, however, evaded the question, and with such propriety, that there is no necessity for this court to enter into it; for, suppose it to be conceded, that Tanner expatriated himself by his removal, what would become of his lands, which he had acquired while he was a citizen, and to which, on his abandonment of his country, he bad a complete title ? We can expect no answer to the question, from British authorities ; for that country has so pertinaciously adhered to the doctrine, that no subject can expatriate himself, that no provision exists in her common or statute law, disposing of the estate of an expatriated person. To whom the estate passes, and how it is to be disposed of, if granted to an alien, is provided for ; but the disposition of it, when held by a legitimate subject, before and at the time he became an alien, is not provided for. But be the right of Virginia what it may, with regard to preventing her citizens from becoming aliens, she, no doubt, possessed the power of prescribing what should be unequivocal evidence of their becoming so. This she did do, by the act of 1783, 2 Litt. 580. As the common law, which she derived from England, made no provision for the forfeiture of estates formerly held, on becoming an alien, the legislature alone could supply the casus omisus. On this subject *266 Virginia said nothing, and we cannot suppose, notwithstanding in the same act she declares the right of expatriation to be a natural right, she yet intended that the estates of her citizens, who should change their residence to the dominions of a friendly power, as Tanner did, without pursuing the requisitions of the statute, should be forfeited. She only attempted to forfeited the estates of those who went to her enemies. Hence, it may be doubted, whether, if Tanner had pursued the requisitions of the act, his estate, held formerly, while a citizen, would have been forfeited, (when the legislature made no declaration to that effect,) so that he could not convey it. The court below, therefore, could not have erred in deciding that evidence of his expatriation, of such ambiguous character as that offered, did not disqualify him from conveying his title, since, if evidence of the conclusive character pointed out by law, had been adduced, his disqualification to do the same act would have been questionable; for whatever may be the power of American governments, with regard to retaining the persons of their citizens at all times, and reclaiming them at all places, no doubt can be entertained with regard to the lands of their citizens, vested while such, and claimed by them after expatriation. Government may permit such titles to be sold and conveyed after expatriation, or direct them to be taken away; and until she does the latter, it is doubtful whether power can exist in a court to forfeit them. The same doctrines are intimated by the supreme court of the United States, in the case of Talbott vs. Jansen, 3 Dallas 133, and in the case of M’Ilvain vs. Coxe, 2 Cranch 230 and 4 Cranch 209. A person born in New Jersey, previous to the revolution, who, in 1777, joined the British army, and adhered to that government ever since, and resided there, receiving compensation for his services as a suffering refugee, was allowed to take and hold lands in that state, by a descent cast long since his defection from the government; which is a much stronger case than this.
Hearsay evidence of the place of a man's birth, is inadmissible.
7. One other question made by the assignment of errors, we are compelled to notice. The plaintiff asked one of his witnesses, if it was not reputed in 1784 or 1785, that Tanner, the patentee, was a native of North Carolina. This question was objected to, and it was *267 insisted, that the witness should be allowed to detail his own knowledge only, on this subject, and not reports. The objection was overruled, and the witness directed to answer the question.
When incompetent testimony has been erroneously permitted to go to the jury, and afterwards competent testimony of the same fact has been introduced, the court of appeals must, nevertheless, reverse the judgment.
This decision cannot be supported by authority. Hearsay evidence is admissible to prove pedigree, and the declarations of a deceased parent, have been admitted to prove the time of a child’s birth ; but are rejected when offered to prove the place—Phil. Ev. 195. Much less is the common report of those who may not have the means of knowing, admissible to prove the place of nativity.
8. But after the hearsay evidence was admitted, the defendant in error produced competent evidence of the same fact. Hence the question arises, when improper evidence of a material fact is admitted, and the record shows that afterwards proper evidence of the same matter was introduced, ought the judgment, on account of this error, to be reversed ; or ought the error to be considered as corrected by the subsequent testimony ? If the proper evidence, introduced after the improper, was of a conclusive character, the error might perhaps be cured; but when the proper evidence consists in the swearing of witnesses, as in this case, and is, from its nature, contestable in many ways, we cannot say that the jury was guided by the proper evidence alone, or that, that which was improper, had no influence. They might naturally have considered the direct testimony as corroborated by the evidence of the general report of the same fact. We cannot know but that the jury, from the manner itself in which the witness who deposed of his own knowledge detailed the facts, might have doubted or disbelieved his testimony. For these reasons, we conceive this error must be held fatal to the judgment, however much we may regret disturbing a verdict in a cause so long depending, and which, in all other respects, seems to have been fairly and correctly decided.
Judgment reversed with costs.