Lewis *v.* Kennedy.

———— ✦.◎ ◦ ·————

## LEWIS *v.* KENNEDY.

*Evidence that an attachment debtor, while residing in another state, and over ten years before was embarrassed, litigious, and had put his property out of his hands is not admissible or relevant to prove that "he is about in some manner to dispose of or remove his property with intent to defraud his creditors."*

ERROR *to Des Moines District Court.*

*Opinion by* WILLIAMS, C. J. This action is brought upon a record of a judgment, certified from the court of common pleas of Trumbull County, Ohio. The plaintiff in the court below declared in debt, and sued out a writ of attachment. Upon appearing in defence of the action, the defendant by plea denied the facts set forth in the plaintiff's affidavit, upon which the writ of attachment was founded. An issue was made thereon and tried by a jury. The finding of the

jury was for the plaintiff. Judgment was entered accordingly. The material allegation in the affidavit upon which the plaintiff sued out the writ of attachment, and denied by the defendant in the issue tried, is as follows : "That said Gary Lewis *is* in some manner about to dispose of, or remove his property with intent to defraud his creditors." The testimony adduced upon the trial is contained in depositions, all of which are here certified and made a part of the bill of exceptions. The matters set forth in the depositions and permitted by the court to go to the jury to maintain the issue, on the part of the plaintiff, were objected to by the counsel for the defendant, on the ground that they do not apply to the issue, are irrelevant, and not responsive. The court overruled the objection and permitted them to be read in evidence. Exceptions were taken to that ruling. It appears by the depositions of witnesses, citizens of Trumbull County, Ohio, that Lewis some ten years ago removed from thence to Iowa. That for some twenty years or more, he had been extensively engaged in business there. That he became involved in debt and embarrassed. Judgments to a large amount were obtained against him, and persons who were his sureties, and executions were issued on those judgments. That previous to the issuance of those executions he had put his property out of his hands by transferring it to others, so that it could not be made subject to levy. That persons who had become his endorsers and security in the indebtedness, were proceeded against, and some of the money made out of them. That notwithstanding the transfer of his property, he continued to exercise control of it. That there was much strife, legally and otherwise, between him and his creditors, and those who had become involved with him as his bail. Such was the condition of his affairs of business until he removed to Lee County, Iowa, where he had been resident some ten years before the commencement of this suit, and the attachment proceeding thereon. The testimony is very voluminous and consists of facts testi-.

fied, chiefly, by persons who had been engaged in legal strife with him there. The evidence of the several witnesses concurs in charging him with a litigious spirit, and establishes the fact that, when executions were likely to be issued against him in Ohio, he was in the habit of transferring his property to avoid the effect thereof. There is no evidence whatever, tending to establish any fact which would even raise a presumption that, since his residence in Iowa, for ten years previous to the sueing out of the attachment, he had manifested any design to avoid in any manner the payment of his debts. Such is the sum of the evidence, so far as is material for consideration here.

Did the district court err, in admitting this evidence, and by instructing the jury as to the law upon it, as set forth in the record? The evidence having been allowed to go to the jury, the court was requested to charge the jury as follows : That the plaintiff cannot sustain this issue by proving that the debtor was a man who was pre-disposed to convey his property to hinder and delay his creditors." This instruction was modified by the court, by adding thereto, the following : " Such testimony, alone, may not be sufficient, but such a fact may be given to the jury." It was thus given to the jury.

The court was then further requested by defendant's attorney, to instruct the jury as follows : " That the plaintiff must show, affirmatively, that he had, from the facts which were transpiring at or about the time of the attachment, *good grounds* for believing that defendant was about to convey his property fraudulently to keep it from his creditors." This was also given by the court with the following modifications : " The general conduct of the defendant upon that subject for a long continued time prior to the attachment, may be considered by the jury." It is the opinion of this court, that the evidence as permitted to go to the jury was of itself improper, not being pertinent to the issue, and that the instructions of the court

thereon were erroneous, having a tendency to mislead the jury.

The legislature clearly intended the facts—upon which the belief of the affiant, "that the defendant *is about in some manner* to dispose of, or remove his property with intent to defraud his creditors"—should be founded and predicated upon some indications of word or act, which would warrant a reasonable man to believe that he, *then*, at the time of the application for the writ, was *about* to defraud his creditors. These facts are by the terms of the act made essential to the right of the attachment. A mere speculative or vague belief, is not contemplated. Such a belief is not susceptible of establishment by proof. It must necessarily depend upon the opinions of those who might be influenced by caprice or prejudice for or against a defendant. The trials of an issue, made upon such belief, could never be adjusted, so as to be reasonably certain, and free from doubt. Surely the legislature never intended to authorize a resort to such extremely harsh procedure on such grounds. To do so would render the most honest debtor liable to disappointment and the ruin of his property and credit, at the will of an impatient or incensed creditor. The legislature, by the terms used in the act, intended that the fraudulent design of the debtor should be established by the proof of facts relative to the subject matter of the issue on trial, in accordance with the well defined rules of the law of evidence. This we hold to be the manifest design of the statute, as well as the dictate of sound reason. Any other construction would lead to injustice and oppression. The statute authorizing the issue and trial upon it, we think, is sufficiently explicit upon this subject. It is as follows : " When a writ of attachment shall be sued out from any court of record of this state or from any justice of the peace, upon the return thereof, the defendant may join issue on the facts and allegations set forth in the affidavit, on which the attachment is sued out, and thereupon said issue shall be

. Lewis *v.* Kennedy.

tried by a jury impanneled and sworn to try the same in like manner as a jury is impanneled and sworn to try other issue of fact in said courts." Rev. Stat. 78, § 2.

But it is urged " that the evidence adduced on the trial of the issue, which strongly tended to establish the design of defendant to hinder, delay, and defraud his creditors in Ohio, before he removed to this state, and which related to transactions there, which transpired some ten years before the sueing out of this writ, was properly admitted by the court on the trial below, and that it was sufficient to warrant the finding of the verdict of the jury, on the ground that it went to show his fraudulent disposition, and establish his general character, as a man who would delay and hinder his creditors in their legal attempts to enforce the payment of his debts." What we have already said upon the subject of the design of the statute as expressed therein, as to the issue, and the facts intended to be tried thereon, is sufficient to make manifest the inapplicability of this evidence to the issue as joined, and the error of the instructions as given by the court to the jury in the case at bar. The bill of exceptions purports to set forth all the testimony of the case. It consists entirely of facts which had transpired in the state of Ohio, ten years anterior to the issuance of the attachment in this case, without any direct application to the issue contemplated by the statute, and as joined between the parties. It could only serve to raise a presumption against the defendant, based upon those facts, from which his general character might be assailed. But would this evidence be sufficient to justify the jury, upon the issue joined, to find a verdict that, *at the time* of the sueing out of the writ of attachment in this suit, he was about to dispose of his property with intent to defraud his creditors? We think not. However competent such evidence might be, if the plaintiff had first given testimony of any fact or facts, which would tend directly to establish, on his part, the issue joined, in order to strengthen the evidence,

Lewis *v.* Kennedy.

certainly—until some ground in fact, upon the issue then joined had been laid for its operation—it was inadmissible, being irrelevant. The general character of a party, can, in any case, be known, and formed by his conduct in matters occurring in his life, previous to the occurrence of the facts alleged in the action, and the issue on trial. To allow such facts to be resuscitated after the lapse of ten or twelve years, and made the gravamen of a legal proceeding such as this, would be pushing the severity of the attachment law to an extreme never contemplated by the legislature. Such a a construction of the law would operate oppressively, by stamping upon a man a character for fraudulent design in his transactions of life, which would preclude him from reclaiming his position in reputation or business. "The general character of the parties to a civil suit offers such a weak and vague inference, as to the truth of the points in issue between them, that it is not usual to admit evidence of it." In an action by an heir at law, for fraud and imposition by defendant, and also, in an action for keeping false weights, it was ruled that witnesses could not be examined to give evidence of general character ; 1 Phil. Ev. 466-467, and cases there cited. If such evidence when offered as additional to those directly touching the issue, and cumulative be inadmissible, how much the more so, when an attempt is made to use it to prove the issue as joined in the case at bar.

We are of the opinion that the evidence as given to the jury was of facts upon which the issue in the case did not depend, and therefore it was irrelevant. The instruction of the court is also erroneous, being upon irrelevant testimony as the case was presented, and calculated to influence and mislead the jury ; *Weed* v. *Bishop,* 7 Conn. 128 ; *Shearer* v. *Clay,* 1 Litt. 260 ; *Osgood* v. *Manhattan,* Co., 3 Cowan, 621 ; *Penfield* v. *Carpenter,* 13 John, 350 ; *Irwin* v. *Cook,* 15 John, 239.                    Judgment reversed.

*J. C. Hall* and *C. H. Phelps,* for plaintiff in error.
*L. R. Reeves,* for defendant in error.