Cushing, J.,
 

 delivered the opinion of the court, as
 
 *126
 
 follows,
 
 (a)
 
 — The court deems it unnecessary to declare an opinion upon a point which was much debated in this cause, whether a real British subject, born before the 4th of July 1776 ; who never, from the time of his birth, resided within any of the American colonies or states, can, upon the principles of the common law, take lands by descent in the United States ; because Daniel Coxe, under whom the lessor of the plaintiff claims, was born in the province of New Jersey, long before the declaration of independence, and resided there until some time in the year 1777, when he joined the British forces.
 

 Neither does this case produce the necessity of discriminating very nicely the precise point of time when *Daniel Coxe lost his right of election *212] to abandon the American cause, and to adhere to his allegiance to the king of Great Britain ; because he remained in the state of New Jersey, not only after she had declared herself a sovereign state, but after she had passed laws by which she pronounced him to be a member of, and in allegiance to, the new government. The court entertains no doubt that after the 4th of October 1776, he became a member of the new society, entitled to the protection of its government, and bound to that government by the ties of allegiance.
 

 This opinion is predicated upon a principle which is believed to be undeniable, that the several states which composed this Union, so far at least as regarded their municipal regulations, became entitled, from the time when they declared themselves independent, to all the rights and powers of sovereign states, and that they did not derive them from .concessions made by the British king. The treaty of peace contains a recognition of their independence, not a grant of it. From hence, it results, that the laws of the several state governments were the laws of sovereign states, and as such were obligatory upon the people of such state, from the time they were enacted. We do not mean to intimate an opinion, that even a law of a state, whose form of government had been organized prior to the 4th of July 1776, and which passed prior to that period, would not have been obligatory. The present case renders it unnecessary to be more precise in stating the principle ; for although the constitution of New Jersey was formed previous to the general declaration of independence, the laws passed upon the subject now under consideration were posterior to it.
 

 Having thus ascertained the situation of Daniel Coxe, on the 4th of October 1776, let us see, whether it was in any respect changed by his subsequent conduct, in relation to the new government. Without expressing an opinion upon the right of expatriation, as founded on the common law, or upon the application of that principle to a person born in the state of New Jersey, before its separation from the mother country, we think it conclusive upon the point, that the legislature of that state *by the most unequivocal declarations, asserted its right to the allegiance of such of its citizens as had left the state, and had not attemj>ted to return to their former allegiance. The act of the 5th of June 1777, contains an express declaration, that all such persons were subjects of the state, who had been seduced by the enemy from their allegiance. The law speaks of them
 
 *127
 
 as fugitives, not as aliens, and they are invited, not to become subjects, but to return to their duty, which the legislature clearly considered as still subsisting and obligatory upon them.
 

 The inquiry which the jury is directed to make, by the act of the 18th of April 1778, in order to lay a foundation for the confiscation of the personal estates of these fugitives is, whether the person had, between the 4th of October 1776, and the 5th of June 1777, joined the armies of the King of Great Britain, or otherwise offended against the form of his allegiance to the state. The 7th section of this law is peculiarly important, because it provides not only for past cases, which had occurred since the 5th of June 1777, but for all future cases, and in all of them, the inquiry is to be, whether the offender has joined the armies of the king, or otherwise offended against the form of his allegiance to the state.
 

 During all this time, the real estates of these persons remained vested in them ; and when by the law of the 11th of December 1778, the legislature thought proper to act upon this part of their property, it was declared to be forfeited for their offences, not escheatable on the ground of alienage. This last act is particularly entitled to attention, as it contains a legislative declaration of the point of time when the right of election to adhere to the old allegiance ceased, and the duties of allegiance to the new government commenced. Those who joined the enemy between the 19th of April 1775, and the 4th of October 1776 (when an express declaration upon the subject was made), and who had not since returned and become subjects in allegiance to the new government, by taking the oaths of abjuration and allegiance, are pronounced guilty of high treason, not for the purpose of affecting p2, , them personally, which would have *been most unjust; but with a *- view to the confiscation of their estates. And consistent with this distinction, the jury are to inquire in respect to these persons, not as in the case of those who had left the state, after the 4th of October 1776, whether they had offended against the form of their allegiance, but whether they are offenders within this act, that is, by having joined the enemy between the 19th of April 1775, and the 4th of October 1776, and not having returned and become subjects in allegiance to the state.
 

 Having taken this view of the laws of New Jersey upon this subject, it may safely be asserted, that prior to the treaty of peace, it would not have been competent, even for that state to allege alienage in Daniel Coxe, in the face of repeated declarations of the legitimate authority of the government, that he continued to owe allegiance to the state, notwithstanding all his attempts to throw it off. If he was an alien, he must have been so by the laws of New Jersey ; but those laws had uniformly asserted, that he was an offender against the form of his allegiance to the state. How, then, can this court, acting upon the laws of New Jersey, declare him an alien ? The conclusion is inevitable, that, prior to the treaty of peace, Daniel Coxe was entitled to hold, and had a capacity to take lands, in New Jersey by descent.
 

 But it is insisted, that the treaty of peace, operating upon his condition at that time, or afterwards, he became an alien to the state of New Jersey in consequence of his election, then made to become a subject of the king, and his subsequent conduct confirming that election. In vain have we searched that instrument, for some clause or expression, which by any im
 
 *128
 
 plication could work this effect. It contains an acknowledgment of the independence and sovereignty of the United States, in their political capacities, and a relinquishment on the part of his Britannic majesty, of all claim to the government, propriety and territorial rights of the same. These concessions amounted, no doubt, to a formal renunciation of all claim to the allegiance of the citizens of the United States. But the question who were at that period citizens of the *United States is not decided, nor in the -1 slightest degree alluded to, in this instrument ; it was left necessarily to depend upon the laws of the respective states, who, in their sovereign capacities, had acted authoritatively upon the subject. It left all such persons in the situation it found them, neither making those citizens, who had by the laws of any of the states been declared aliens, nor releasing from their allegiance any who had become, and were claimed, as citizens. It repeals no laws of any of the states which were then in force and operating upon this subject, but on the contrary, it recognises their validity, by stipulating that congress should recommend to the states, the reconsideration of such of them as had worked confiscations. If the laws relating to this subject were, at that period, in the language of one of the counsel, temporary andywicii
 
 officio,
 
 they certainly were not rendered so by the terms of the treaty, nor by the political situation of the two nations, in consequence of it A contrary doctrine is not only inconsistent with the sovereignties of the states, anterior to, and independent of, the treaty, but its indiscriminate adoption might be productive of more mischief than it is possible for us to foresee.
 

 If, then, at the period of the treaty, the laws of New Jersey, which had made Daniel Coxe a subject of that state, were in full force, and were not repealed, or in any manner affected, by that instrument, if, by force of these laws, he was incapable of throwing off his allegiance to the state, and derived no right to do so, by virtue of the treaty, it follows, that he still retains the capacity which he possessed before the treaty, to take lands by descent in New Jersey, and consequently, that the lessor of the plaintiff is entitled to recover.
 

 Judgment must be affirmed, with costs.
 

 (a)
 

 Johnson, J., did not vote upon this question; and Todd, J., gave no opinion, as he had not been present at the argument.