RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0269p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ABIGAIL LADD; CHRISTINA GONZALES; IDA DUENKE; GERARDO SALDAÑA; DAVID SALDAÑA; MARCELINO SALDAÑA; ALICIA ROBERTS; MELINDA ADDENBROCK; DEANNA MCCRATE,

> *Plaintiffs-Appellants*,

*v.*

JACK MARCHBANKS, Ohio Department of Transportation,

> *Defendant-Appellee*.

No. 19-4136

---

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:19-cv-01609—Jack Zouhary, District Judge.

Argued:  August 6, 2020

Decided and Filed:  August 20, 2020

Before:  NORRIS, NALBANDIAN, and READLER, Circuit Judges.

---

## COUNSEL

**ARGUED:**  Zachary J. Murry, BARKAN & ROBON, LTD., Maumee, Ohio, for Appellants. Stephen P. Carney, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.  **ON BRIEF:**  Zachary J. Murry, BARKAN & ROBON, LTD., Maumee, Ohio, for Appellants.  Benjamin M. Flowers, Samuel C. Peterson, William J. Cole, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

———————————

**OPINION**

———————————

NALBANDIAN, Circuit Judge.  "It is not in the power of individuals to call any state into court." 3 Debates on the Constitution 533 (J. Elliot ed. 1876) (James Madison).  This principle of state sovereign immunity was foundational to the formation of our republic.  Certain constitutional provisions and acts of Congress have abrogated the States' sovereign immunity— and of course the States may waive their immunity at their pleasure.  But by and large the States remain protected from private civil suits.  We held as much for takings claims brought against states in federal court.  *DLX, Inc. v. Kentucky*, 381 F.3d 511, 526 (6th Cir. 2004).  So when the plaintiffs here brought a takings claim against an Ohio official and Ohio asserted its sovereign immunity as an affirmative defense, the district court dismissed the suit for lack of subject matter jurisdiction.  Because *DLX* remains the law of this circuit, we **AFFIRM**.

I.

Abigail Ladd, Christina Gonzales, Ida Duenke, Gerardo Saldaña, David Saldaña, Marcelino Saldaña, Alicia Roberts, Melinda Addenbrock, and Deanna McCrate (collectively "Plaintiffs") are property owners in Hancock County, Ohio.[1]  In 2016, the Ohio Department of Transportation began a construction project on a portion of Interstate Highway Seventy-Five near Plaintiffs' properties.  As a result of this construction, storm and groundwater flooded Plaintiffs' properties three times and caused significant damage.  So Plaintiffs filed a federal complaint against Jack Marchbanks, Director of the Ohio Department of Transportation, in his official capacity.  The complaint contains two counts.  First, a claim brought directly under the Fifth Amendment to the United States Constitution and Article I, Section 19 of the Ohio Constitution, seeking a declaratory judgment that the flooding caused a "change in topography [that] constitutes a taking of private property without just compensation," and compensation for

———————————

[1]Because Plaintiffs appeal the district court's order dismissing their complaint under Federal Rule of Civil Procedure 12(b)(1), we take as true the pleaded facts unrelated to our jurisdiction.  *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1045 (6th Cir. 2015).

the same.  (R. 1, Compl. at PageID # 7.)  And second, a claim brought under 42 U.S.C. § 1983 seeking damages for the alleged taking.

Marchbanks moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1), because Ohio's sovereign immunity deprived the district court of subject matter jurisdiction, and under Federal Rule of Civil Procedure 12(b)(6), because the complaint fails to state a claim upon which relief can be granted.  The district court granted Marchbanks's motion, holding that "[t]he Eleventh Amendment prohibits Plaintiffs from asserting these claims in federal court."[2]  (R. 17, Dismissal Order at PageID # 102.)  This appeal follows.

## II.

We review a district court's order dismissing a complaint under Federal Rule of Civil Procedure 12(b)(1) de novo "except that, like the district court, we do not presume the truth of factual allegations pertaining to our jurisdiction to hear the case, and the plaintiff still bears the burden of demonstrating jurisdiction[.]"  *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1045 (6th Cir. 2015).

"After independence, the States considered themselves fully sovereign nations. . . . Under international law, then, independence 'entitled' the Colonies 'to all the rights and power of sovereign states.'"  *Franchise Tax Bd. of Cal. v. Hyatt*, 139 S. Ct. 1485, 1493 (2019) (quoting *McIlvaine v. Coxe's Lessee*, 8 U.S. (4 Cranch) 209, 212 (1808)).  And "'[a]n integral component' of the States' sovereignty was 'their immunity from private suits.'"  *Id.* (quoting *Fed. Mar. Comm'n v. S.C. Ports Auth.*, 535 U.S. 743, 751–52 (2002)).  With their ratification of the federal Constitution, the States ceded many aspects of their sovereign authority to the federal government—but not their immunity from civil suit.  *Id.* at 1497; *see* U.S. Const. art. I, § 10; art. IV, §§ 1, 2.  As Madison put it: "Each State, in ratifying the Constitution, is considered as a sovereign body, independent of all others, and only to be bound by its own voluntary act."  The Federalist No. 39 (James Madison).  And Hamilton echoed a similar sentiment: "It is inherent in

---

[2]The district court said only that it dismissed the complaint "under Federal Civil Rule 12(b)."  (R. 17, Dismissal Order at PageID # 102.)  Although it didn't specify which subsection of Rule 12(b) it ruled under, we interpret it as doing so under Federal Rule of Civil Procedure 12(b)(1) because "Eleventh Amendment issues are jurisdictional in nature."  *Russell*, 784 F.3d at 1046.

the nature of sovereignty not to be amenable to the suit of an individual without its consent. This is the general sense, and the general practice of mankind; and the exemption, as one of the attributes of sovereignty, is now enjoyed by the government of every State in the Union." The Federalist No. 81 (Alexander Hamilton) (emphasis omitted).

That said, by ratifying the federal Constitution, the States consented to federal court jurisdiction over them for certain suits. For example, Article III "provide[s] a neutral federal forum in which the States agreed to be amenable to suits brought by other States." *Hyatt*, 139 S. Ct. at 1495 (citing U.S. Const. art. III, § 2). And they "similarly surrendered a portion of their immunity by consenting to suits brought against them by the United States in federal courts." *Id*. (citing *Monaco v. Mississippi*, 292 U.S. 313, 328 (1934); *Fed. Mar. Comm'n*, 535 U.S. at 752). Early on, the Supreme Court held that by ratifying Article III, Section Two's inclusion of cases "between a state and citizens of another state" within the judicial power of the United States, the States consented to federal jurisdiction over civil suits brought by private citizens against the States. *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419, 420 (1793). But "[t]hat decision precipitated an immediate furor and uproar across the country. Congress and the States accordingly acted swiftly to remedy the Court's blunder by drafting and ratifying the Eleventh Amendment." *Hyatt*, 139 S. Ct. at 1495–96 (quotation marks and citations omitted). That Amendment makes clear: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Nor do federal courts have jurisdiction over suits against the States by their own citizens. *Hans v. Louisiana*, 134 U.S. 1, 18–19 (1890).

Yet some constitutional provisions authorize Congress to abrogate the States' sovereign immunity. For example, Section Five's grant of Congressional power to enforce the Fourteenth Amendment's substantive provisions permits such abrogation. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). As does Article I's grant of legislative power to Congress over bankruptcy matters. *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 378–79 (2006). Notably, 42 U.S.C. § 1983 does not abrogate the States' sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 342 (1979). All in all, the States' sovereign immunity predates the Constitution; so unless the Constitution

itself, or Congress acting under a constitutional grant of authority, abrogates that immunity, it remains in place.[3] *Alden v. Maine*, 527 U.S. 706, 713 (1999); *see William Baude*, *Sovereign Immunity and the Constitutional Text*, 103 Va. L. Rev. 1, 13–15 (2017).

In *DLX, Inc. v. Kentucky*, we held that the States' sovereign immunity protects them from takings claims for damages in federal court. 381 F.3d at 526, *overruled on other grounds by San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323 (2005). True, the plaintiffs in *DLX* sued the Commonwealth of Kentucky, and Plaintiffs here sued an officer of the State of Ohio. But this formality can't help plaintiffs bypass sovereign immunity "'when the state is the real, substantial party in interest,' as when the 'judgment sought would expend itself on the public treasury or domain, or interfere with public administration.'" *Stewart*, 563 U.S. at 255 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984)) (internal quotation marks and citation omitted). Plaintiffs sued Marchbanks in his official capacity, so the Ohio treasury is responsible for any judgment against him. Thus, Ohio's sovereign immunity extends to Marchbanks. And we haven't overruled *DLX* as an en banc court. So "unless a decision of the United States Supreme Court mandates modification[,]" *DLX* forecloses Plaintiffs' claim for damages under 42 U.S.C. § 1983. *United States v. Moody*, 206 F.3d 609, 615 (6th Cir. 2000).

All of this is well-settled. But this case presents one twist. Namely, Plaintiffs claim that the Supreme Court's recent decision in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), overruled *DLX*. They say that the Court's use of the terms "a government," "the government," and "state officials" connotate a broad application of "and an implicit, if not explicit, recognition by the Supreme Court that the fact of the taking should be the critical component of this Court's inquiry, with little regard for the entity conducting the tak[ing]." (Appellants' Br. at 24.) In other words, so long as a taking has occurred, a state cannot assert its sovereign immunity as a defense.

---

[3]Of course, "[a] State may waive its sovereign immunity at its pleasure[.]" *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). But Ohio hasn't done so here. It asserted its sovereign immunity in a motion to dismiss before taking any other action that can be construed as consenting to this suit.

The fatal flaw in Plaintiffs' argument is that the Court's opinion in *Knick* says nothing about sovereign immunity. And as Plaintiffs concede, the defendant in *Knick* was a municipality, so it had no sovereign immunity to assert. (*Id.* ("As the Opinion in *Knick* dealt with the actions of a Pennsylvania township the Court was not forced to directly address the interplay between the Fifth Amendment's taking clause and the state sovereign immunity of the Eleventh Amendment.")); *see N. Ins. Co. of N.Y. v. Chatham County*, 547 U.S. 189, 193 (2006) ("[T]his Court has repeatedly refused to extend sovereign immunity to counties."); *Jinks v. Richland County*, 538 U.S. 456, 466 (2003) ("[M]unicipalities, unlike States, do not enjoy a constitutionally protected immunity from suit."). *Knick* held only that takings plaintiffs are no longer required to exhaust their claims in state court before filing a federal claim—overruling *Williamson Cty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)—it did not alter the sovereign immunity framework discussed above.

In fact, the Court implies that sovereign immunity *does* have a role to play in takings cases. In reaffirming *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018 n.21 (1984), the Court notes that Congress can, as a condition of its waiver of sovereign immunity in the Tucker Act, require takings plaintiffs to exhaust administrative remedies before proceeding to federal court. *Knick*, 139 S. Ct. at 2173–74. So the Fifth Amendment's Takings Clause does not abrogate sovereign immunity. At bottom, *Knick* cannot be the basis for abandoning *DLX*. And the only two other federal courts of appeals to consider this argument have reached the same conclusion. *See Bay Point Props., Inc. v. Miss. Transp. Comm'n*, 937 F.3d 454, 456 (5th Cir. 2019); *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1214 (10th Cir. 2019).

Plaintiffs also point us to an older Supreme Court case, *First English Evangelical Lutheran Church of Glendale v. Los Angeles County*, 482 U.S. 304, 316 (1987), suggesting that footnote nine in that case directly contradicts *DLX*'s holding. (Appellants' Br. at 26–27.) And we have said generally that a prior panel's opinion doesn't control "in the unusual situation where binding circuit precedent overlooked earlier Supreme Court authority." *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 720 (6th Cir. 2016). So even though *First English* predates *DLX*, if Plaintiffs are correct in their interpretation of footnote nine, *First English* could mandate modification of our holding in *DLX*. Here, however, Plaintiffs' argument fails.

Plaintiffs contend that in footnote nine and its surrounding text, the *First English* Court suggests, in broad terms at least, that the Fifth Amendment is self-executing and therefore mandates a takings remedy in federal court. But the panel in *DLX* can hardly be said to have "overlooked" *First English* and footnote nine. Indeed, the party seeking compensation in *DLX* invoked *First English* to support its argument that takings claims are not barred by the States' sovereign immunity. 381 F.3d at 527. And we rejected it, citing footnote nine and other authorities in support. We held that "closer examination of [*First English*] reveals that [it is] concerned not with abrogating the states' Eleventh Amendment immunity in *federal* court, but with noting that the Fifth Amendment's requirement of just compensation forces the states to provide a judicial remedy in their *own* courts." *Id*. And in *Knick*, the Supreme Court also rejected Plaintiffs' reading of *First English*. It cited footnote nine in support of its holding about *when* a Takings Clause violation occurs, not against whom and in what forum such a claim can be brought. *Knick*, 139 S. Ct. at 2172–73. So *First English* also doesn't require reconsideration of our holding in *DLX*.

Without a Supreme Court case that mandates modification of *DLX*'s holding, it binds us.**[4]** Thus, Ohio's sovereign immunity protects Marchbanks from Plaintiffs' § 1983 claim for damages and erodes our subject matter jurisdiction.

---

**[4]**Plaintiffs raise two additional arguments, but neither has merit. First, they cite a long passage from the Supreme Court's decision in *Citizens United v. Federal Election Commission*, 558 U.S. 310, 377–78 (2010), and argue that because the Constitution's protection against uncompensated takings is a fundamental right, stare decisis cannot be "an inexorable command, nor a mechanical formula of adherence to the latest decision[.]" (Appellants' Reply Br. at 3–4.) But as a panel, we have no authority to overrule the prior decisions of another panel. *Moody*, 206 F.3d at 615. Second, Plaintiffs raise a substantive argument that the Fourteenth and Fifth Amendments together abrogate the States' sovereign immunity against takings claims. Plaintiffs claim that because the Fifth Amendment "subsumes" any substantive due process claims arising out of a physical taking, *see Banks v. City of Whitehall*, 344 F.3d 550, 554 (6th Cir. 2003), Congress' abrogation power under Section Five of the Fourteenth Amendment extends to Fifth Amendment takings claims. *Graham v. Connor* held that specific constitutional provisions *limit* the breadth of the substantive due process clause, not that those provisions "subsume" the Fourteenth Amendment's due process protections. 490 U.S. 386, 395 (1989). But assuming *arguendo* that Plaintiffs' theory is correct, their argument still fails. *Fitzpatrick* only recognized that Congress *can* abrogate the States' sovereign immunity through its Fourteenth Amendment enforcement power. 427 U.S. at 456. Yet Plaintiffs point to no act of Congress that purportedly abrogates the States' sovereign immunity against takings claims. 42 U.S.C. § 1983 didn't do so. *Quern*, 440 U.S. at 342. And without proper Congressional action, or constitutional abrogation, the States' sovereign immunity remains.

III.

Plaintiffs' other claim seeks both a declaratory judgment and compensation. To the extent the claim seeks compensation, it is barred for the same reasons set forth in section two of this opinion. As for their request for a declaratory judgment, Plaintiffs argue that under *Ex parte Young*, 209 U.S. 123 (1908), Marchbanks is amenable to suit. *Ex parte Young* is a clarification of when a state's sovereign immunity extends to shield its officers from suit. "[W]hen 'the state is the real, substantial party in interest,' as when the 'judgment sought would expend itself on the public treasury or domain, or interfere with public administration[,]'" the state's sovereign immunity extends to protect its officers from suit. *Stewart*, 563 U.S. at 255 (quoting *Pennhurst*, 465 U.S. at 101) (internal quotation marks and citation omitted). But when plaintiffs seek an injunction to prevent prospective violations of federal law, the state's sovereign immunity does not shield its officers. *Id*. The problem here is that Plaintiffs seek neither prospective nor proper equitable relief.

"*Ex parte Young* cannot be used to obtain an injunction requiring the payment of funds from the State's treasury[.]" *Id*. at 256–57. But that's what Plaintiffs seek here. They ask us to "direct Defendant Marchbanks and ODOT to initiate eminent domain proceedings in state court." (Appellants' Br. at 33.) And if Plaintiffs prevail in those proceedings, the state court will issue a compensation award that Ohio's treasury must pay. Ohio Rev. Code §§ 163.05, 163.14. So Plaintiffs seek an order they can use to require Ohio to pay them for its alleged taking of their property—the exact type of claim *Stewart* tells us isn't a proper workaround to the States' sovereign immunity. *See Stewart*, 563 U.S. at 256–57. What's more, *Ex parte Young* can only be used to avoid a state's sovereign immunity when a "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)). And none of the relief Plaintiffs seek is prospective. "[T]he entire gravamen of Plaintiff[s'] claims in this action" is their claim for compensation for the damage they allege the Ohio Department of Transportation *already caused*. (Appellants' Br. at 32.) Plaintiffs don't seek an injunction barring Marchbanks from any further construction that would

damage their property.[5] And that's the only prospective relief that would satisfy *Ex parte Young* here. So Ohio's sovereign immunity bars Plaintiffs' declaratory judgment claim as well.

Plaintiffs also claim that Ohio's statutory mechanism for obtaining compensation to remedy a Takings Clause violation is unconstitutional because it does not provide reasonable, certain, and adequate procedures. The State says that Plaintiffs forfeited this argument because nothing in their complaint seeks a declaration that Ohio's procedures for seeking compensation for a takings claim are constitutionally invalid. The State is correct that Plaintiffs' present this argument for the first time in their brief to our Court, and the argument doesn't appear in their summary judgment briefing below.

Nevertheless, even if we were to read Plaintiffs' complaint broadly—namely by construing their claim that Ohio's taking of their property violated the Fifth Amendment as also encompassing their argument that Ohio's procedures for seeking compensation are inadequate— their claim still fails. The requirement that states provide citizens they take property from a reasonable, certain, and adequate procedure to seek compensation comes from *Williamson County*, 473 U.S. at 194, and it's unclear what remains of that case after *Knick*. *See* 139 S. Ct. at 2178 ("*Williamson County* was not just wrong. Its reasoning was exceptionally ill founded and conflicted with much of our takings jurisprudence."). It may well be that a state only needs to provide reasonable, certain, and adequate procedures to remedy a Takings Clause violation if it wishes to avoid a federal court preemptively enjoining the state from taking property. *See id.* at 2175–77. Regardless, when *Williamson County* was good law, we held in *Coles v. Granville* that Ohio's statutory mechanism for obtaining compensation to remedy a Takings Clause violation does provide reasonable, certain, and adequate procedures. 448 F.3d 853, 861–65 (6th Cir. 2006). So to the extent this inquiry is still relevant, we've resolved it.[6]

---

[5]Nor are we certain we could issue that relief. In *Knick*, the Supreme Court reiterated that "[a]s long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking." 139 S. Ct. at 2176. And in *Coles v. Granville*, we held that Ohio's statutory mechanism for obtaining compensation to remedy a Takings Clause violation is reasonable, certain, and adequate. 448 F.3d 853, 861–65 (6th Cir. 2006).

[6]To the extent Plaintiffs argue that Ohio cannot assert its sovereign immunity in federal court when it provides inadequate procedures (as opposed to no remedy at all) in its own courts, that argument, too, fails. Plaintiffs cite no case, nor can we find one, that holds as much. And while there may be a constitutional problem if

Finally, the Supreme Court has made clear that federal courts cannot enjoin state officials from violating state law. *Pennhurst*, 465 U.S. at 121. So to the extent Plaintiffs seek equitable relief against Marchbanks for violating the Ohio Constitution, we have no authority to grant it.

IV.

For these reasons, we **AFFIRM** the district court's dismissal of Plaintiffs' complaint for lack of subject matter jurisdiction.

---

a state ever were to eliminate *all* procedures for seeking compensation for a taking, *see DLX, Inc.*, 381 F.3d at 521 n.7; *see also Alden*, 527 U.S. at 754–55 ("The constitutional privilege of a State to assert its sovereign immunity in its own courts does not confer upon the State a concomitant right to disregard the Constitution or valid federal law."); *First English*, 482 U.S. at 316 n.9, Ohio hasn't done that. By complaining about the procedures that Ohio provides, Plaintiffs necessarily concede that Ohio does provide *some* procedure for seeking compensation for a taking.