RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0262p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

WCI, INC.,

                      *Plaintiff-Appellant*,

    *v.*

OHIO DEPARTMENT OF PUBLIC SAFETY; OHIO LIQUOR
CONTROL COMMISSION,

                      *Defendants-Appellees*.

No. 20-3930

───────────────

Appeal from the United States District Court for the Southern District of Ohio at Dayton.
No. 3:17-cv-00282—Thomas M. Rose, District Judge.

Argued:  May 26, 2021

Decided and Filed:  November 17, 2021

Before:  BOGGS, BATCHELDER, and BUSH, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:**  Anthony R. Cicero, CICEROADAMS LLC, Dayton, Ohio, for Appellant.  Stephen
P. Carney, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees.
**ON BRIEF:**  Anthony R. Cicero, CICEROADAMS LLC, Dayton, Ohio, for Appellant.  Stephen
P. Carney, Benjamin M. Flowers, Charles E. Febus, Joseph E. Schmansky, OFFICE OF THE
OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees.

───────────────

## OPINION

───────────────

    JOHN K. BUSH, Circuit Judge.  Nude dancing is not allowed at strip clubs with an Ohio
liquor license.  So when WCI, Inc. let its employees at Cheeks Gentlemen's Club perform fully
nude in the presence of undercover agents, the Ohio Liquor Control Commission issued an order

presenting WCI with a choice: pay a $25,000 fine or have its liquor license revoked. WCI appealed the order in the Ohio court system and lost. Displeased with that outcome, WCI filed a complaint in federal court alleging numerous constitutional violations and seeking money damages along with declaratory and injunctive relief.

In an earlier appeal, we affirmed the district court's dismissal of several of WCI's constitutional claims, so that only the claims alleging violations of the Due Process Clause and the Excessive Fines Clause remained. On remand, the district court dismissed those remaining claims for lack of jurisdiction. We affirm.

I.

A.    FACTUAL AND PROCEDURAL BACKGROUND

WCI holds an Ohio liquor license and does business as Cheeks Gentlemen's Club. On March 8, 2014, the Ohio Department of Public Safety sent undercover agents to investigate Cheeks. During the investigation, a female dancer offered an agent a private lap dance. She took the agent to a private room, disrobed, and performed the lap dance fully nude. That indiscretion earned WCI a citation under Ohio Administrative Code § 4301:1-1-52 (Rule 52), which prohibits a business with a liquor license from allowing nude performances on its premises.

The Ohio Liquor Control Commission held a hearing and issued an order finding that WCI had violated Rule 52. The order required WCI to pay a fine of $25,000 or give up its liquor license. WCI appealed the decision to the Franklin County Court of Common Pleas, which upheld the order, as did the Ohio Court of Appeals. The Ohio Supreme Court declined to grant discretionary review.

Out of options in the Ohio court system, WCI filed suit in federal court, alleging a welter of constitutional violations under the First Amendment, Eighth Amendment, Equal Protection Clause, and Due Process Clause. Defendants moved to dismiss all counts for failure to state a claim, and the district court granted the motion. On appeal, we affirmed as to the First Amendment and equal-protection claims but reversed and remanded as to the due-process and

Eighth Amendment claims. *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 774 F. App'x 959, 967 (6th Cir. 2019).

On remand, Defendants answered the complaint, then moved to dismiss the remaining claims for lack of subject-matter jurisdiction. After referring the case to a magistrate judge, the district court determined that it lacked jurisdiction for three reasons: the Eleventh Amendment bars the suit, WCI lacks standing to pursue an injunction, and the *Rooker-Feldman* doctrine bars all of WCI's claims.[1] WCI timely appeals.

B.    THE CLAIMS

The main thrust of WCI's argument in this appeal is that the Commission routinely violates the Due Process Clause and the Excessive Fines Clause when enforcing Rule 52 and that it should be permanently enjoined from doing so in the future. The excessive-fines claim is straightforward enough: WCI believes that the punitive fines the Commission levies against strip clubs as an alternative to revoking their licenses are much too high. As for the due-process claim, WCI alleges that the Commission has "unbridled discretion" to impose penalties on strip clubs that violate the nude-dancing prohibition. Though the exact remedy it seeks is unclear, WCI seems to want the court to fashion an injunction that would impose limits on the Commission's discretion in assigning penalties against strip clubs that take an unbuttoned approach to Rule 52.

II.

We review the district court's dismissal for lack of jurisdiction de novo. *Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F.3d 917, 919 (6th Cir. 2009).

Federal jurisdiction over WCI's claims is lacking for two reasons. First, to the extent the complaint seeks damages resulting from Defendants' enforcement of Rule 52, those claims are

---

[1]The magistrate judge also noted the possibility that WCI's claims are barred by res judicata but did not decide the issue because WCI claimed that it made an effective reservation under *England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411 (1964). We need not consider whether WCI made a valid *England* reservation or whether its claims are barred by res judicata or *Rooker-Feldman* because its suit has other jurisdictional defects.

barred by sovereign immunity.  Second, because WCI cannot establish an injury-in-fact, it lacks standing to seek an injunction.

A.     SOVEREIGN IMMUNITY

State governments are immune from suits for money damages absent consent, *Ladd v. Marchbanks*, 971 F.3d 574, 578 (6th Cir. 2020), as are state officials sued in their official capacity, *Thiokol Corp. v. Dep't of Treasury, Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993). WCI's complaint seeks an award of monetary damages for constitutional claims against two state agencies and the heads of those agencies in their official capacities. A favorable judgment on such a claim "would expend itself on the public treasury." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984)).  Therefore, to the extent WCI seeks monetary relief based on alleged violations of its constitutional rights, sovereign immunity bars the claims.[2]

The parties and the district court conflate the common-law doctrine of sovereign immunity with the immunity conferred by the Eleventh Amendment.  And they are not the first: courts have often treated Eleventh Amendment immunity and sovereign immunity as interchangeable concepts.  *See, e.g.*, *Lapides v. Bd. of Regents*, 535 U.S. 613, 616 (2002); *Town of Smyrna v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 650 (6th Cir. 2013); *but see Alden v. Maine*, 527 U.S. 706, 713, 728–29 (1999) (locating the source of sovereign immunity outside the Eleventh Amendment).  But as a matter of original meaning, the two are conceptually distinct. The Eleventh Amendment removes from federal jurisdiction "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State[.]"  U.S. Const. amend. XI.  The plain text of the amendment includes a diversity requirement and sounds in subject-matter jurisdiction.  William Baude & Stephen E. Sachs, *The Misunderstood Eleventh Amendment*, 169 U. Pa. L. Rev. 609, 612 (2021).  Though courts have regarded Eleventh Amendment immunity as waivable in some cases, *see Nair v. Oakland Cnty. Cmty. Mental*

---

[2]In belated recognition of this, WCI's counsel asked the court to disregard the complaint's request for damages as nothing more than a "general, catchall provision that is seen in every complaint."  Oral Argument at 30:38.  But a request for relief the plaintiff knows it is not entitled to receive goes beyond the merely lamentable, lawyerly habit of handing in formulaic pleadings crammed with desultory argle-bargle, so we affirm the district court's dismissal of the damages claim.

*Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006) (collecting cases), its unequivocal language "admits of no waivers, abrogations, or exceptions ('to *any suit* in law or equity')," *PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244, 2265 (2021) (Gorsuch, J., dissenting) (quoting U.S. Const. amend. XI).  State sovereign immunity, on the other hand, refers to a state's right "not to be amenable to the suit of an individual without its consent."  The Federalist No. 81, at 486 (Alexander Hamilton) (Clinton Rossiter ed., 1961) (emphasis omitted).  Sovereign immunity "neither derives from, nor is limited by, the terms of the Eleventh Amendment," *Franchise Tax Bd. v. Hyatt*, 139 S. Ct. 1485, 1496 (2019) (quoting *Alden*, 527 U.S. at 713), and its origins predate the Constitution, *id.* at 1493 (citing *McIlvaine v. Coxe's Lessee*, 8 U.S. (4 Cranch) 209, 212 (1808)).  It sounds in personal jurisdiction and may be waived by a state's conduct.  Caleb Nelson, *Sovereign Immunity as a Doctrine of Personal Jurisdiction*, 115 Harv. L. Rev. 1559, 1565–66 (2002).[3]  And unlike the Eleventh Amendment, it erects a jurisdictional bar in both state and federal courts and does not require diversity among the litigants.  *See* Baude & Sachs, *supra*, at 614.

WCI is an Ohio corporation suing the Ohio government.  Neither party contends that Ohio has consented to suit in this case.  Because the parties are not diverse, sovereign immunity applies, and the Eleventh Amendment, by its plain terms, does not.  Therefore, we hold that sovereign immunity bars WCI's claim for damages.[4]

---

[3]Although sovereign immunity sounds in personal jurisdiction as an original matter, federal courts do not treat personal-jurisdiction defenses and sovereign-immunity defenses the same for the purpose of waiver.  *See* Fed. R. Civ. P. 12(h)(1) (failing to raise a personal-jurisdiction defense in a Rule 12(b)(2) motion or responsive pleading results in waiver); *Nair*, 443 F.3d at 474 ("Like subject-matter jurisdiction, a sovereign-immunity defense may be asserted for the first time on appeal . . . and it may (and should) be raised by federal courts on their own initiative." (citations omitted)).  We do not disturb these well-settled rules here.

[4]We recognize that courts have departed somewhat from the Eleventh Amendment's original meaning and have largely forced sovereign immunity and the Eleventh Amendment into the same Procrustean bed.  *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 394 (1998) (Kennedy, J., concurring) (noting the "hybrid" nature of sovereign-immunity doctrine).  But here, both the original meaning and our caselaw compel the same result.

B.　　ARTICLE III STANDING

WCI argues that, even if Defendants are immune from claims for damages, they are still subject to suits for prospective injunctive relief under the *Ex parte Young* doctrine.[5]　That observation is true enough, but it does not help WCI.　To seek the kind of injunctive relief *Ex parte Young* permits, WCI must establish that it has standing under Article III.　In its prior appeal, WCI did not appear to argue that it was entitled to forward-looking injunctive relief. Rather, it principally claimed entitlement to remedies for past government misconduct— specifically, the $25,000 fine and the threatened loss of its liquor license.　*See WCI*, 774 F. App'x at 960.　So the question of standing to seek a prospective injunction was not presented then as it is now.　But even if WCI had standing to sue for past harms, it still "must demonstrate separate standing to seek declaratory or injunctive relief focused on prospective harm."　*Barber v. Miller*, 809 F.3d 840, 849 (6th Cir. 2015).　It has not done so.

Standing has three elements: injury, causation, and redressability.　*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).　An injury is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'"　*Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).　To establish causation, the injury must be fairly traceable to the defendant's conduct.　*Id.*　And for an injury to be redressable, it must be likely to be redressed by a favorable decision.　*Id.* at 561.　WCI's claims fail on the first and second elements.

*Due-process claims.*　WCI claims that the Commission's practice of penalizing strip clubs violates the Due Process Clause because there are no guidelines or limitations on the kinds of sanctions it can impose for Rule 52 violations. But WCI does not allege that it is currently violating Rule 52 or that the threat of due-process-violating enforcement by the Commission is certainly impending.　Indeed, the complaint describes in great detail the pains WCI takes to *avoid* Rule 52 violations. Thus, WCI cannot, and does not, claim as its injury-in-fact the imposition of any particular sanction, whether a fine or the loss of a liquor license.　Instead, it

---

[5]*Ex parte Young* allows federal courts to enjoin state officers in their official capacities from prospectively violating federal law.　209 U.S. 123, 152 (1908).

points to two other sources of injury: the bare threat of potential, future sanctions and the effect of those potential sanctions on its current business. Neither is sufficient to establish standing.

The hypothetical threat of some future harm, even a likely future harm, is not an injury-in-fact. "When a plaintiff claims to have standing based on the threat of a future injury, it is not enough that the future injury is reasonably likely to occur—the 'threatened injury must be certainly impending.'" *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 865 (6th Cir. 2020) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)). WCI has nowhere alleged that it plans to violate Rule 52 or offered any other reason that sanctions for Rule 52 violations are certainly impending. So its first proposed source of injury is unpersuasive.

The second fares no better. WCI claims that the possibility of future sanctions for Rule 52 infractions will require it to "terminate or substantially alter the form and content" of its employees' "exotic dance performances" in a way that will "destroy[] the business goodwill developed by the Plaintiff, and caus[e] severe financial hardship, as well as other forms of irreparable harm." But that alleged injury is logically disconnected from the defendants' allegedly unlawful conduct, so it fails the causation element of the standing inquiry. The complaint expressly disavows any challenge to the substantive restrictions against nudity imposed by Rule 52 and seeks only to limit the Commission's discretion in meting out punishments to violators. And given WCI's insistence that it takes extensive measures to ensure that its dancers comply with Rule 52, it simply does not follow that WCI would need to alter the content of its performances to avoid Rule 52 enforcement. *See California v. Texas*, 141 S. Ct. 2104, 2114 (2021) (holding that an alleged injury is not fairly traceable to a government-enforcement action when no enforcement is threatened).

*Eighth Amendment.* WCI also lacks standing to bring its claim under the Excessive Fines Clause. As with its due-process claims, WCI does not purport to seek relief from any past violation of its Eighth Amendment rights. Rather, it argues exclusively for prospective injunctive relief from future excessive fines arising from Rule 52 violations. But because WCI has not alleged in the complaint that any future Eighth Amendment violation is "certainly impending," it has not established an injury sufficient to establish Article III standing. *Buchholz*, 946 F.3d at 865.

The bottom line is that WCI cannot pursue an injunction under the *Ex parte Young* doctrine because it lacks standing to bring any of its remaining claims.

III.

For the reasons set forth above, we affirm the district court's dismissal of all claims for lack of jurisdiction.