RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0293p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ALEXANDRIA PARROTTA,

*Plaintiff-Appellant*,

*v.*

ISLAND RESORT AND CASINO,

*Defendant-Appellee*.

No. 25-1283

———————————

Appeal from the United States District Court for the Western District of Michigan at Marquette.
No. 2:24-cv-00056—Robert J. Jonker, District Judge.

Decided and Filed: October 23, 2025

Before: NALBANDIAN, MATHIS, and RITZ, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** Colin H. Wilkin, HURWITZ LAW PLLC, Ann Arbor, Michigan, for Appellant. Jesse C. Viau, HANNAHVILLE INDIAN COMMUNITY, Wilson, Michigan, Mark E. Hills, MCSHANE & BOWIE, P.L.C., Grand Rapids, Michigan, for Appellee.

———————————

**OPINION**

———————————

NALBANDIAN, Circuit Judge. Alexandria Parrotta sued her employer, the Island Resort and Casino, for allegedly forcing her to resign rather than accommodating her needs as a new mother. But it turns out that the Casino is owned and operated by the Hannahville Indian Community, a federally recognized Indian tribe. So the district court dismissed Parrotta's claims, holding them to be barred by the tribe's sovereign immunity from suit. We agree, so we affirm.

**I.**

The restaurant business is tough work.  Plaintiff Alexandria Parrotta's time working at Horizons Steakhouse—Defendant Island Resort and Casino's (IRC) restaurant—allegedly took that to the next level.  At the end of her time there, her manager pressured her to resign rather than accommodating her needs as a new mother.  So she sued the IRC in federal court, raising claims under the Fair Labor Standards Act (FLSA) and related (though unspecified) state-law claims.  But her suit soured almost immediately.  The IRC moved to dismiss under Federal Rule of Civil Procedure 12(b)(1), invoking (among other defenses) the federal common-law doctrine of tribal sovereign immunity.  The IRC noted that it's owned and operated by the Hannahville Indian Community (HIC)—a federally recognized Indian tribe.  The magistrate judge found that tribal sovereign immunity barred Parrotta's claims and recommended that the district court dismiss the case.  The district court adopted that recommendation over Parrotta's objection and dismissed her claims without prejudice.  Parrotta timely appealed.

**II.**

The only issue before us today is whether the HIC's tribal sovereign immunity divests the court of subject-matter jurisdiction.  We review the district court's determination of that issue de novo.  *Ladd v. Marchbanks*, 971 F.3d 574, 577 (6th Cir. 2020).  And the burden rests on Parrotta to show that we have jurisdiction.  *Id.*

It's "settled law" that federally recognized tribes enjoy immunity from suit in federal or state court.  *See Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998).  But that immunity isn't unyielding.  It can be removed through (1) a "clear" waiver by the tribe or (2) an "unequivocal[]" abrogation by Congress.  *C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 418 (2001) (first quoting *Okla. Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.*, 498 U.S. 505, 509 (1991); then quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)).  Parrotta argues waiver only.

Parrotta's claim that the HIC waived its immunity hinges on a snippet from the HIC's Tribal Constitution.  R.10-1, HIC Tribal Const., p.5, PageID 113.  Article V of the HIC Constitution spells out the powers of the Tribal Council.  And after describing those powers, it

pledges that "[t]he Council shall not exercise any of the foregoing powers so as to conflict with any laws of the United States which apply to the [HIC]." *Id.* From that latter statement alone, Parrotta asserts that the HIC has waived its immunity from suit with respect to all federal laws that apply to it. *See, e.g.*, Appellant Br., p.5 (arguing that the HIC Constitution "is clear and explicit in abrogating immunity as to 'any laws of the United States which apply'").

Parrotta's reading overreaches for a few reasons. First, and most importantly, the language she cites doesn't come close to constituting a "clear" waiver of immunity. Although Parrotta failed to produce a single case illustrating what constitutes clear waiver, our own survey confirms that the HIC Constitution's language doesn't pass the threshold.

To start with, the HIC Constitution's text reads nothing like the language the Supreme Court considered when it found a clear waiver in *Citizen Band*. When the Citizen Potawatomi Nation hired a roofer to work on one of its buildings, it contracted to arbitrate any resulting disputes. *Citizen Band*, 532 U.S. at 418–19. And the Court held that the text of the contract's arbitration clause constituted a clear waiver because, when read alongside the rest of the contract, it clearly identified the specific substantive law and tribunals to which the tribe consented to be subjected. *Id.* The HIC Constitution's general commitment to comply with federal law contains no such specifics.

Now contrast that with the way circuit courts interpret language that *does* track the HIC Constitution's. When federal or state governments condition funds on tribes' commitments to comply with certain legal requirements, courts treat those commitments as just that—promises, not clear waivers of immunity. *Miller v. Wright*, 705 F.3d 919, 924 (9th Cir. 2013); *Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282, 1289 (11th Cir. 2001); *Dillon v. Yankton Sioux Tribe Hous. Auth.*, 144 F.3d 581, 584 (8th Cir. 1998); *Seneca v. Great Lakes Inter-Tribal Council, Inc.*, No. 22-2271, 2023 WL 4340699, at *2 (7th Cir. July 5, 2023) (order). So too when tribes, as part of their contracts with their employees, commit to comply with federal employment law. *Nanomantube v. Kickapoo Tribe in Kan.*, 631 F.3d 1150, 1152–53 (10th Cir. 2011) (finding that a tribal employee handbook committing to complying with federal law did not waive tribal sovereign immunity); *Allen v. Gold Country Casino*, 464 F.3d 1044, 1047 (9th Cir. 2006) ("The Casino did not waive immunity . . . when it stated in the Employee Orientation Booklet that it

would 'practice equal opportunity employment . . . [as] protected by applicable federal laws.'"). At bottom, we can't find—and Parrotta has failed to identify—any cases where a court has found clear waiver based on a tribe's generalized commitment to follow the law. And that makes sense. A tribe's commitment to follow the law is distinct from its concession to appear in court when a private party accuses it of violating the law. *See Fla. Paraplegic, Ass'n v. Miccosukee Tribe of Indians of Fla.*, 166 F.3d 1126, 1130 (11th Cir. 1999) ("[W]hether an Indian tribe is *subject* to a statute and whether the tribe may be *sued* for violating the statute are two entirely different questions.").

Second, Parrotta's blinkered focus on the HIC Constitution ignores another piece of tribal law: the HIC Tribal Sovereignty Code. As the district court noted, the Code provides that, among other requirements, any immunity waiver must be set out in a "formal, written resolution of the Tribal Council." R.15, Order, p.2, PageID 249 (quoting R.11-1, HIC Tribal Sovereign Immunity Code, p.2, PageID 138). Parrotta doesn't argue that the HIC promulgated any such resolution waiving immunity here. But rather than conceding that she can't sue the HIC absent such a formal waiver, she argues that we should disregard the Code as an "inferior . . . document" to the HIC Constitution. Appellant Br., p.8. Unfortunately for Parrotta, we cannot simply ignore a sovereign's laws that are inconvenient to her case.

Perhaps recognizing the weakness of that argument, Parrotta offers an alternative. Implicitly conceding that the Code applies, she argues that the HIC Constitution *itself* constitutes a "formal, written resolution of the Tribal Council" that would suffice under the Code's terms. *Id.* at pp.8–9. We struggle to see how that could be the case. The HIC Constitution *creates* the Tribal Council, and so it couldn't possibly be a resolution *from* the Tribal Council. *See* R.10-1, HIC Tribal Const., p.5, PageID 113. And in any case, as discussed above, the HIC Constitution's text doesn't clearly waive the tribe's sovereign immunity.

Third, Parrotta continuously muddies the waters between two "entirely different" inquiries: (1) whether the FLSA's commands apply to the HIC as a threshold matter, and (2) if so, whether the HIC can be haled into court to answer for violating those commands. *See Miccosukee Tribe*, 166 F.3d at 1130 (citing *Kiowa Tribe*, 523 U.S. at 755). Parrotta spends much of her appellate brief arguing that "the FLSA is a statute of general applicability and applies to

[the HIC]." Appellant Br., pp.10–16. But that's not what's at issue here. Indeed, the HIC concedes the point. *See* Appellee Br., pp.23–24 (recognizing that the FLSA's requirements apply to the HIC, but that claimants must pursue non-judicial remedial pathways, like filing a complaint with the NLRB, to seek relief). All agree that the FLSA *applies* to the HIC. The dispute here is about whether a private party can press that application by bringing the HIC into court using the FLSA's private cause of action. In other words, Parrotta's *rights* are settled—the HIC had to comply with the FLSA with respect to her employment. But that's distinct from the *remedial* matter of whether Parrotta can seek relief against the HIC through a lawsuit. As we explain here, the answer to that latter question is "no."

At the end of the day, Parrotta hasn't carried her burden of showing that the HIC clearly waived its tribal sovereign immunity. The HIC Constitution contains no such waiver; rather, it commits the tribe to complying with federal law. The HIC Tribal Sovereignty Code sets the required steps for the tribe to waive its immunity, none of which the tribe took here. Moreover, the FLSA's substantive applicability to the tribe doesn't automatically mean that any party can pull the tribe into court using the FLSA's private cause of action. And because we resolve this appeal on tribal-sovereign-immunity grounds, we decline to address the parties' other outlying arguments.

## III.

For the foregoing reasons, we affirm.