RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0159p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

SKATEMORE, INC., a Michigan corporation dba Roll Haven Skating Center; SLIM'S REC, INC., a Michigan corporation dba Spartan West Bowling Center/Beamers Restaurant; MR. K ENTERPRISES, INC., a Michigan corporation dba Royal Scot Golf & Bowl; M.B. AND D. LLC, a Michigan limited liability company dba Fremont Lanes; R2M, LLC, a Michigan limited liability company dba Spectrum Lanes & Woody's Press Box,

     *Plaintiffs-Appellants*,

   *v.*

GRETCHEN WHITMER, in her official capacity as Governor of the State of Michigan; ROBERT GORDON, in his official capacity as Director of the Michigan Department of Health and Human Services; MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES, a Michigan Administrative Agency,

     *Defendants-Appellees*.

┐
│
│
│
│
│
│  No. 21-2985
│
│
│
│
│
│
┘

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:21-cv-00066—Hala Y. Jarbou, District Judge.

Argued: April 27, 2022

Decided and Filed: July 19, 2022

Before: CLAY, GRIFFIN and WHITE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Stephen P. Kallman, KALLMAN LEGAL GROUP, PLLC, Lansing, Michigan, for Appellants. Daniel J. Ping, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees. **ON BRIEF:** Stephen P. Kallman, David A. Kallman, KALLMAN LEGAL GROUP, PLLC, Lansing, Michigan, for Appellants. Daniel J. Ping, Darrin F. Fowler, Kyla Barranco, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

———————————

## OPINION

———————————

CLAY, Circuit Judge. Plaintiffs Skatemore, Inc., Slim's Rec, Inc., Mr. K Enterprises, Inc., M.B. and D. LLC, and R2M, LLC, operators of bowling alleys and roller-skating rinks in Michigan, sued Michigan Governor Gretchen Whitmer, former Michigan Department of Health and Human Services ("MDHHS") Director Robert Gordon, and the MDHHS alleging that various orders limiting the use of Plaintiffs' properties early in the COVID-19 pandemic constituted an unconstitutional taking in violation of the Fifth Amendment of the U.S. Constitution and Article X of the Michigan Constitution. The district court found that Defendants were entitled to immunity pursuant to the Eleventh Amendment and accordingly dismissed Plaintiffs' complaint for lack of jurisdiction. The district court also denied Plaintiffs' motion to amend their complaint. We **AFFIRM** for the reasons set forth below.

## I.  BACKGROUND

### A.  Factual Background

In late 2019 and early 2020, SARS-CoV-2—the virus responsible for COVID-19—began spreading around the world. This novel strain of a coronavirus caused an alarming uptick in hospitalizations and deaths. Early research found that the virus spreads through respiratory droplets. To mitigate the spread of the virus, individuals were promptly and repeatedly advised to avoid close indoor contact.

On March 10, 2020, Michigan Governor Gretchen Whitmer announced that state public health officials had detected the first known cases of COVID-19 in the state. That same day, Governor Whitmer declared a state of emergency in an attempt to slow the spread of the virus. A few days later, on March 16, 2020, Governor Whitmer signed Executive Order ("EO") 2020-09, which "closed to ingress, egress, use, and occupancy by members of the public" various places of public accommodation, including places of public amusement.[1] Specifically included in the definition of "places of public amusement" were bowling alleys and skating rinks. Despite prohibiting the public from entering such premises, EO 2020-09 "encouraged [affected businesses] to offer food and beverage using delivery service, window service, walk-up service, drive-through service, or drive-up service." EO 2020-09. The purpose of this first EO was "[t]o mitigate the spread of COVID-19, protect the public health, and provide essential protections to vulnerable Michiganders . . . ." *Id*. Among the affected bowling alleys and roller-skating rinks were Plaintiffs Skatemore, Inc., Slim's Rec, Inc., Mr. K Enterprises, Inc., M.B. and D. LLC, and R2M, LLC (collectively "Plaintiffs").

Over the next several months, Governor Whitmer extended the closure of bowling alleys for a few weeks at a time. *See* EO Nos. 2020-20 (Mar. 21, 2020), 2020-43 (Apr. 15, 2020), 2020-69 (May 1, 2020), 2020-100 (May 26, 2020). However, the piecemeal extension of bowling alley and roller-skating rink closures ended on June 1, 2020, when Governor Whitmer ordered the affected businesses to indefinitely limit their operations. *See* EO Nos. 2020-110 (June 1, 2020), 2020-160 (July 30, 2020), 2020-176 (Sept. 3, 2020), 2020-183 (Sept. 25, 2020). Instead of identifying a specific expiration date, the EOs issued on or after June 1, 2020, simply identified factors the governor would consider when deciding whether to alter or end the restrictions. Beginning on September 3, 2020, bowling alleys and roller rinks were permitted to "serv[e] as a venue for organized sports." EO No. 2020-176. In several of the EOs, Governor Whitmer specifically noted that Michigan courts were reviewing the legality of the EOs. *See* EO Nos. 2020-110, 2020-160, 2020-176, 2020-183.

---

[1]The various EOs cited throughout this opinion are accessible at https://www.michigan.gov/whitmer/news/state-orders-and-directives.

On October 2, 2020, the Michigan Supreme Court held that Governor Whitmer lacked the power to issue emergency orders after April 30, 2020. *In re Certified Questions from U.S. Dist. Ct., W. Dist. of Mich., S. Div.*, 958 N.W.2d 1, 11 (Mich. 2020). On November 15, 2020, MDHHS Director Robert Gordon[2] issued an order pursuant to his independent authority under Mich. Comp. Laws § 333.2253. Director Gordon's emergency order, which became effective on November 18, 2020, mirrored Governor Whitmer's EOs insofar as it prohibited the public from entering and using bowling alleys and skating rinks. MDHHS Order (Nov. 15, 2020), available at https://www.michigan.gov/coronavirus/0,9753,7-406-98178_98455-545136-- ,00.html. Director Gordon extended the closures twice. Plaintiffs' businesses remained closed until December 21, 2020, when MDHHS's orders naturally expired.

### B. Procedural Background

On January 20, 2021, Plaintiffs commenced this action against Governor Whitmer, Director Gordon, both in their official capacities, and MDHHS. They alleged that the forced "closure" of their bowling alleys and roller-skating rinks from March 16, 2020 to October 2, 2020 and November 18, 2020 to December 21, 2020 were unconstitutional takings in violation of the Fifth Amendment of the U.S. Constitution and Article X, § 2 of the Michigan Constitution. Plaintiffs brought their Fifth Amendment takings claim against Governor Whitmer and Director Gordon under 42 U.S.C § 1983.

Defendants jointly moved to dismiss the complaint. They first argued that the district court lacked jurisdiction because they were entitled to Eleventh Amendment immunity. *See* Fed. R. Civ. P. 12(b)(1). Plaintiffs responded that because Defendants promulgated the EOs pursuant to legislation that was held unconstitutional by the Michigan Supreme Court, the Eleventh Amendment did not apply. They also argued that the Supreme Court's recent decision in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), carved out an exception to Eleventh Amendment immunity; and therefore, the Eleventh Amendment could not be invoked to dismiss a Fifth Amendment takings claim in federal court. Plaintiffs further argued that the Fourteenth Amendment, which made the Fifth Amendment Takings Clause applicable to the states,

---

[2]Robert Gordon was the Director of MDHHS at all times relevant to this action.

abrogated state sovereign immunity with respect to takings claims because the Fourteenth Amendment was ratified after the Eleventh Amendment. Finally, Plaintiffs argued that the Fifth Amendment is an exception to the Eleventh Amendment because it expressly provides for "just compensation" and "[i]t would not make any logical sense for the 5th Amendment to apply to the states through incorporation by the 14th Amendment, but to then have the 11th Amendment nullify it completely by barring all 'just compensation' from those same states." (Pls.' Resp. Br., R. 19, Page ID #96.)

Defendants also argued that Plaintiffs had failed to state a claim because the EOs did not amount to a taking. *See* Fed. R. Civ. P. 12(b)(6). While Defendants' motion to dismiss was pending, Plaintiffs sought leave to amend their complaint to supplement their factual allegations and to sue Governor Whitmer and Director Gordon in their personal capacities.

In a combined order, the district court granted Defendants' motion to dismiss and denied Plaintiffs' motion to amend the complaint. The district court first held that Defendants were entitled to immunity. It held that *Knick* did not overrule Sixth Circuit precedent, which had established that the Takings Clause is not an exception to Eleventh Amendment immunity. Although the Eleventh Amendment holding was sufficient to dismiss the case, the court went on to hold that even if it had jurisdiction, the EOs' temporary limitation on the use of Plaintiffs' property did not amount to an actionable taking. Finally, the court held that any attempt by Plaintiffs to amend their complaint would be futile. Even if Plaintiffs were permitted to sue Governor Whitmer and Director Gordon in their personal capacities, the EOs would still not amount to an unconstitutional taking. In sum, the district court dismissed Plaintiffs' complaint without prejudice and denied Plaintiffs' motion to amend the complaint. Plaintiffs timely appealed.

## II.  DISCUSSION

### A.  Eleventh Amendment Immunity

#### i.  Standard of Review

We review dismissals for lack of subject matter jurisdiction *de novo*.  *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1045 (6th Cir. 2015).  The Court must construe the complaint in the light most favorable to the Plaintiffs; however, the Court need "not presume the truth of factual allegations pertaining to our jurisdiction to hear the case."  *Id.*

#### ii.  Analysis

Upon gaining independence, the several states "considered themselves fully sovereign nations."  *Franchise Tax Bd. of Cal. v. Hyatt*, 139 S. Ct. 1485, 1493 (2019).  This sovereignty was not only in name; the states inherited "all the rights and powers of sovereign states."  *Id.* (quoting *McIlvaine v. Coxe's Lessee*, 8 U.S. (4 Cranch) 209, 212 (1808)).  Among the rights states inherited as newly sovereign nations was "immunity from private suits."  *Id.* (quoting *Fed. Mar. Comm'n v. S.C. Ports Auth.*, 535 U.S. 743, 751–52 (2002)).

The states' unencumbered sovereignty did not last long.  By ratifying the Constitution, the states ceded some of the rights they enjoyed under international law to the newly created federal government.  *See id.* at 1495.  One right surrendered to the federal government was states' absolute immunity from certain suits.  In certain actions, such as when one state sues another state, U.S. Const. art. III § 2, the states impliedly consented to federal court jurisdiction.  *Cf. id.* ("The States, in ratifying the Constitution, similarly surrendered a portion of their immunity by consenting to suits brought against them by the United States in federal courts.").

The scope of the states' consent to federal court jurisdiction was first tested in *Chisholm v. Georgia*, 2 Dall. 419 (1793).  In that case, the Supreme Court considered the extent to which state immunity from private suits survived the ratification of the Constitution.  The Court held that "by ratifying Article III, Section Two's inclusion of cases 'between a state and citizens of another state' within the judicial power of the United States, the States consented to federal jurisdiction over civil suits brought by private citizens against the States."  *Ladd v. Marchbanks*,

971 F.3d 574, 577–78 (6th Cir. 2020) (quoting *Chisholm*, 2 Dall. at 420). The states immediately and furiously rejected *Chisholm*. *Hyatt*, 139 S. Ct. at 1495–96. Within months, Congress proposed and passed the Eleventh Amendment to the Constitution, sending the Amendment to the states. On February 7, 1795, just two years after *Chisholm*, the states ratified the Eleventh Amendment. *Id*. at 1496.

> The Eleventh Amendment provides:
>
> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Stated differently, the "Eleventh Amendment bars suits against a state or its agencies in federal court[.]" *Brent v. Wayne Cnty. Dep't of Hum. Servs*., 901 F.3d 656, 681 (6th Cir. 2018). Since the ratification of the Eleventh Amendment, the Supreme Court has expanded the Amendment's plain language in two important ways. First, in *Hans v. Louisiana*, 134 U.S. 1, 18–19 (1890), the Court held that Eleventh Amendment immunity applies to private suits commenced against a state by its own citizens. Second, in *Kentucky v. Graham*, 473 U.S. 159, 169 (1985), the Court made the Eleventh Amendment applicable to state officials sued in their official capacity. Piecing this caselaw together, MDHSS is entitled to invoke sovereign immunity against Plaintiffs' suit because it is a state agency, *Brent*, 901 F.3d at 681, and Governor Whitmer and Director Gordon can also avail themselves of this immunity because Plaintiffs sued them in their official capacities, *Graham*, 473 U.S. at 169.

While Eleventh Amendment immunity provides broad protections for states to dismiss private suits in federal court, the immunity is not limitless. Courts have carved out three exceptions to Eleventh Amendment immunity: "(1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex Parte Young*, 209 U.S. 123[] (1908), applies." *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017). None of these exceptions apply to the present case.

## 1. *Ex parte Young*

Regarding the exception set forth in *Ex parte Young*, Plaintiffs find no relief. *Ex parte Young* permits a private party to seek prospective injunctive relief against state officials in their official capacity before those officials violate the plaintiff's federal constitutional or statutory rights. *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 417 (6th Cir. 2019). In the present case, Plaintiffs are seeking retroactive compensatory damages, not prospective injunctive relief. Accordingly, *Ex parte Young* does not apply here. *See Quern v. Jordan*, 440 U.S. 332, 338 (1979) (quoting *Edelman v. Jordan*, 415 U.S. 651, 677 (1974)) ("[A] federal court's remedial power . . . may not include a retroactive award which requires the payment of funds from the state treasury"); *see also Boler*, 865 F.3d at 412 (stating that *Ex parte Young* "does not extend to retroactive relief or claims for money damages.").

## 2. Abrogation

Plaintiffs argue that the Fifth Amendment's Takings Clause is an exception to the Eleventh Amendment. They seize in particular on the following "blanket statement" from the Supreme Court's decision in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), which they argue "provided no exceptions for the right of property owner[s] to seek relief in federal court for a takings claim." (Appellants' Br. 9.) In *Knick*, the Court stated:

> A property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it . . . And the property owner may sue the government at that time in federal court for the "deprivation" of a right "secured by the Constitution."

*Knick*, 139 S. Ct. at 2170 (quoting 42 U.S.C. § 1983).

In *Knick*, the petitioners challenged the Supreme Court's holding in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). *Williamson County* held that individuals did not suffer Fifth Amendment Takings Clause violations until state courts denied compensation under state law. 473 U.S. at 194. Only after being denied relief in state court could the plaintiffs bring suit in federal court. *Id*. The *Knick* Court overruled *Williamson County,* holding that the plaintiffs no longer need to exhaust state court remedies before seeking relief in federal court. 139 S. Ct. at 2170.

In *Ladd*, the plaintiffs argued that *Knick* overruled earlier Sixth Circuit precedent and that the Takings Clause abrogated Eleventh Amendment immunity. 971 F.3d at 578–79. We rejected this argument and explicitly held that "the Fifth Amendment's Takings Clause does not abrogate sovereign immunity." *Id.* at 579. In reaching this conclusion, we noted that *Knick* was a case against a municipality, and municipalities are not entitled to the protection of Eleventh Amendment immunity. *Id.*; *see, e.g., Jinks v. Richland Cnty.*, 538 U.S. 456, 466 (2003) ("[M]unicipalities, unlike States, do not enjoy a constitutionally protected immunity from suit."). Therefore, it would be a significant expansion of *Knick* to now extend its reasoning to state officials, who typically are entitled to Eleventh Amendment immunity. Plaintiffs do not identify any subsequent or inconsistent authority that casts doubt upon our holding in *Ladd*. *See Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.").

Plaintiffs also argue that the Fourteenth Amendment "abrogated" the Eleventh Amendment by virtue of its having been adopted after the Eleventh Amendment. (*See* Appellants' Br. 11 ("[T]he 14th Amendment, which incorporated the 5th Amendment Takings Clause as applicable to the States, was adopted after the 11th Amendment. Since Congress has the authority to abrogate a State's sovereign immunity, certainly a Constitutional Amendment must do so as well.") (internal citation omitted).) This argument is meritless. "The 14th Amendment only provides Congress with power to enforce the Amendment through legislation, which provides the basis for congressional abrogation. Remedies against states under the 14th Amendment are created by legislation, not by other constitutional amendments." *Ysleta Del Sur Pueblo v. Texas*, No. 99-50656, 2000 WL 122431, at *2 (5th Cir. Jan. 6, 2000) (per curiam).

Accordingly, Plaintiffs' case cannot be saved through the abrogation exception to Eleventh Amendment immunity.

### 3. Consent / Waiver

Plaintiffs next rely on the third exception to Eleventh Amendment immunity—consent or waiver. They argue that the states waived their immunity by ratifying the Fifth and Fourteenth

Amendments.  Defendants respond relying on *Ladd* to argue that the Sixth Circuit has already denied a functionally identical argument.  Plaintiffs reply that *Ladd* is not applicable to this argument because *Ladd* is an abrogation case.

Plaintiffs are correct in arguing that *Ladd* is technically an abrogation case.  *See Ladd*, 971 F.3d at 579 ("[T]he Fifth Amendment's Takings Clause does not *abrogate* sovereign immunity" (emphasis added)).  Nevertheless, even if *Ladd* is not necessarily controlling in this appeal, we find its logic persuasive.  To accept Plaintiffs' argument that the states waived their sovereign immunity by ratifying the Fifth Amendment would effectively overrule *Ladd*.  As recognized by the Fifth Circuit, "[n]othing in *Knick* alters . . . bedrock principles of sovereign immunity law."  *Bay Point Props., Inc. v. Miss. Transp. Comm'n*, 937 F.3d 454, 456 (5th Cir. 2019).  Moreover, both this court and other circuits have held, consistent with *Ladd*, that the Eleventh Amendment bars takings claims against states in federal court, as long as a remedy is available in state court.  *See, e.g., DLX, Inc. v. Kentucky*, 381 F.3d 511, 526–28 (6th Cir. 2004) (holding that Eleventh Amendment barred takings claim against states in federal court and stating that "the Kentucky courts would have had to hear that federal claim"), *overruled on other grounds by San Remo Hotel, L.P. v. City of San Francisco*, 545 U.S. 323 (2005); *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 552 (4th Cir. 2014) (holding that "the Eleventh Amendment bars Fifth Amendment takings claims against States *in federal court* when the *State's courts* remain open to adjudicate such claims." (emphasis in original)).  Plaintiffs do not dispute that the Michigan state courts remain open to hear their claims.  *See, e.g.*, *K & K Constr., Inc. v. Dep't of Nat'l Res.*, 575 N.W.2d 531 (Mich. 1998) (adjudicating takings claim against state entity under Fifth Amendment and Michigan constitution).

Relying on the recent Supreme Court decision in *PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244 (2021), Plaintiffs also argue that the states consented to federal court jurisdiction or waived their immunity to takings claims by ratifying the Fifth and Fourteenth Amendments.  In that case, the Federal Energy Regulatory Commission ("FERC") authorized PennEast to construct an oil pipeline from central Pennsylvania to New Jersey.  *Id*. at 2253.  PennEast extensively researched the best path for the pipeline and ultimately settled on a path that passed through property in which the State of New Jersey had a proprietary interest.  *Id*.  PennEast then

commenced in federal court a condemnation action against New Jersey under 15 U.S.C. § 717f(h) to take possession of the necessary property. *Id.* New Jersey invoked Eleventh Amendment immunity and sought to have the condemnation action dismissed. *Id.*

The Supreme Court held New Jersey could not invoke Eleventh Amendment immunity to have the case dismissed. It explained that under the "plan of the Convention," New Jersey consented to federal court jurisdiction in takings claims brought by (or on behalf of) the federal government. *Id.* at 2259 ("PennEast's condemnation action to give effect to the federal eminent domain power falls comfortably within the class of suits to which States consented under the plan of the Convention."). Historically, sovereigns had enjoyed the power of eminent domain; and the practice was "inextricably intertwined with the ability to condemn." *Id.* at 2260. Because the power to take land for public use was inherent in the sovereignty of the United States, New Jersey impliedly consented to the exercise of federal court jurisdiction in condemnation proceedings commenced by the federal government when it consented to federal sovereignty.

*PennEast* is markedly different than the present case. In that case, PennEast, lawfully exercising the federal eminent domain power, sought to seize state-owned property. In a takings suit between the federal government and a state, it is reasonable to assume, as the Supreme Court did, that the "judicial Power of the United States" extends to such suits. U.S. Const., art. III. But in the present appeal, citizens of Michigan seek compensation from the State of Michigan. The dispute is a purely intra-state matter. To agree with Plaintiffs would be to go beyond the holding of *PennEast*.

Nor can ratification of the Fourteenth Amendment be construed as a waiver of states' Eleventh Amendment immunity. Plaintiffs rely on the fact that the Fourteenth Amendment incorporates the Fifth Amendment. *See Kerns v. Chesapeake Expl., LLC*, 762 F. App'x 289, 295 (6th Cir. 2019). Plaintiffs further argue that by ratifying the Fourteenth Amendment after the Eleventh Amendment, states impliedly waived their immunity to takings claims. This argument is unconvincing. *PennEast* suggests that courts should consider the states' intent at the time of ratification to determine whether they impliedly consented through ratification. *Cf.* 141 S. Ct. at 2258 ("The 'plan of the Convention' includes certain waivers of sovereign immunity to which all

States implicitly consented *at the founding*." (emphasis added)).  There is no indication that at the time Michigan ratified the Fourteenth Amendment in 1867 that the Fifth Amendment's Takings Clause would apply to the states.  In fact, the Takings Clause was the first right to be incorporated and that did not occur until 30 years after the Fourteenth Amendment was ratified. *See Chicago, B. & Q. R. Co. v. City of Chicago*, 166 U.S. 226 (1897).  Moreover, to accept Plaintiffs' argument and hold that states waived their sovereign immunity in suits that invoke a right incorporated through the Fourteenth Amendment would destroy the protection the Eleventh Amendment was specifically ratified to provide.  Future plaintiffs could claim any right incorporated through the Fourteenth Amendment is no longer subject to Eleventh Amendment immunity.

### 4. *Ultra Vires* Action as an Exception to the Eleventh Amendment

In a final attempt to avoid Eleventh Amendment immunity, Plaintiffs strenuously argue that Governor Whitmer, specifically, is not entitled to Eleventh Amendment immunity because she acted *ultra vires*.  Their argument is that the Michigan Supreme Court's October 2, 2020, opinion, which declared the EOs invalid after April 30, 2020, rendered all Governor Whitmer's conduct after that date an unlawful exercise of the police power.[3]  Plaintiffs rely, in part, on *Florida Department of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 689 (1982), which held that "the Eleventh Amendment does not bar an action against a state official that is based on a theory that the officer acted beyond the scope of his statutory authority."  *See also Miami Univ. Associated Student Gov't v. Shriver*, 735 F.2d 201, 204 (6th Cir. 1984) ("State officials are not entitled to [E]leventh [A]mendment immunity if they are acting ultra vires.").  "[A] state officer may be said to act *ultra vires* only when he acts 'without any authority whatever.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984) (quoting *Treasure Salvors*, 458 U.S. at 697).  The test to determine whether a state official has acted *ultra vires* is whether the state official had a "colorable basis for the exercise of authority." *Id.* (quoting *Treasure Salvors*, 458 U.S. at 716 (White, J., concurring in the judgment in part and dissenting in part)).

---

[3]Defendants argue that whether Governor Whitmer acted *ultra vires* is irrelevant because this lawsuit does not challenge the lawfulness of the taking; it simply seeks "just compensation."  While this is correct, the lawfulness of Governor Whitmer's conduct is relevant to whether she is entitled to Eleventh Amendment immunity.

There are several problems with Plaintiffs' argument. First, Governor Whitmer's conduct can hardly be said to have been done without any authority. She issued the EOs in accordance with then-existing Michigan laws. Nearly seven months after she began issuing the EOs, the Michigan Supreme Court held that the laws on which she relied were an "unconstitutional delegation of legislative power to the executive." *In re Certified Questions*, 958 N.W.2d at 24. Plaintiffs ask us to construe the Michigan Supreme Court's holding as retroactively stripping Governor Whitmer of any authority she had; however, the opinion actually suggests the holding was merely prospective. *See id*. at 6, 31 (concluding that "the executive orders issued by the Governor in response to the COVID-19 pandemic *now* lack any basis under Michigan law;" and Michigan law "cannot *continue* to provide a basis for the Governor to exercise emergency powers") (emphases added)). Second, *Pennhurst* and *Treasure Salvors*, the two main cases on which Plaintiffs rely for this *ultra vires* argument, are both cases in which the plaintiffs were seeking injunctive relief. Neither case involved a request for money damages. In fact, in *Treasure Salvors*, the Supreme Court even stated that "[i]f the action is allowed to proceed against the officer only because he acted without proper authority, the judgment may not compel the State to use its funds to compensate the plaintiff for the injury." 458 U.S. at 689; *accord Ex parte Young*, 209 U.S. 123 (1908). Because Plaintiffs are seeking compensatory damages, the *ultra vires* theory of skirting Eleventh Amendment immunity is inapplicable.

In sum, we hold that ratification of the Fifth or Fourteenth Amendments does not constitute waiver of Eleventh Amendment immunity; nor can Defendants in this case be subject to suit in federal court for allegedly acting *ultra vires*. To hold otherwise would require the panel to effectively overrule *Ladd*, significantly expand the scope of *PennEast*, and ignore *Treasure Salvors*. Because Eleventh Amendment immunity is sufficient to affirm the dismissal of Plaintiffs' complaint against each defendant, we decline to address the district court's alternative holding that Plaintiffs have failed to state a claim.

## B. Motion to Amend

After Defendants moved to dismiss the complaint, Plaintiffs sought leave to amend their complaint to add claims against Governor Whitmer and Director Gordon in their personal

capacities.[4] In the same order that the district court granted Defendants' motion to dismiss for lack of subject-matter jurisdiction, the court also denied Plaintiffs' motion to amend, finding that any amendment to the complaint would be futile.

### i. Standard of Review

Typically, this Court reviews denials of motions for leave to amend for an abuse of discretion. *U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 407 (6th Cir. 2016). However, when a motion to amend is denied because amendment would be "futile," this Court reviews the district court's decision *de novo*. *Id.*

### ii. Analysis

In general, district courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But a court need not grant a motion to amend when the reason for amendment is improper, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of amendment*, etc." *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis added)). An amendment is futile when, after including the proposed changes, the complaint still "could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)).

The district court held that amendment would be futile because even if Governor Whitmer and Director Gordon were sued in their personal capacities, the EOs could not amount to a taking. On appeal, Plaintiffs simply state that they seek to amend their complaint to clarify the damages they suffered, but they make no discernible argument as to why any amendment would not be futile. On the other hand, Defendants make two arguments in support of affirming the district court. They first argue that takings claims require state action; and therefore, state officials may not be held liable in a personal capacity. Second, Defendants argue that even if

---

[4]Plaintiffs only seek to amend their complaint as it relates to Governor Whitmer and Director Gordon. They have offered no explanation as to how amendment would save their claims against MDHHS.

personal capacity suits are permissible, they would be entitled to qualified immunity. We need not decide whether personal capacity suits are permitted under the Takings Clause because even if we assume they are, Plaintiffs still lose under the doctrine of qualified immunity.

The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "While the defendant 'bears the burden of pleading' a qualified immunity defense, '[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity.'" *Palma v. Johns*, 27 F.4th 419, 427 (6th Cir. 2022) (quoting *Estate of Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017)) (brackets in original). In determining whether Defendants are entitled to qualified immunity, we apply the well-established two-part inquiry: first, "do the facts alleged show that the officer's conduct violated a constitutional right? Second, is the right clearly established?" *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1093 (6th Cir. 2019) (quoting *Seales v. City of Detroit*, 724 F. App'x 356, 359 (6th Cir. 2018)). We are free to consider these inquiries in any order. *Godawa v. Byrd*, 798 F.3d 457, 462–63 (6th Cir. 2015).

Assuming Plaintiffs alleged an unconstitutional taking, they have failed to show that the alleged constitutional violation was clearly established.[5] The Supreme Court has cautioned courts "not to define clearly established law at a high level of generality." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). But courts also need not wait for the exact fact pattern to occur before concluding that a right has been clearly established. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful."). The question is "whether it would have been clear to a

---

[5]In *Gym 24/7 Fitness, LLC v. State*, No. 355148, -- N.W.2d --, 2022 WL 982050 (Mich. Ct. App. March 31, 2022), the Michigan Court of Appeals rejected a nearly identical challenge by a group of gyms holding substantially similar pandemic-related EOs could not support a takings claim under the U.S. Constitution or the Michigan Constitution.

reasonable offic[ial] that the alleged conduct was unlawful in the situation he confronted." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) (internal quotation marks omitted).

Plaintiffs have not offered any argumentation as to why Defendants are not entitled to qualified immunity. Nor do they direct the Court to any caselaw indicating that Defendants' various orders violated a clearly established constitutional right. And for good reason: there is no clearly established precedent that pandemic-era regulations limiting the use of individuals' commercial properties can constitute a Fifth Amendment taking. In fact, the overwhelming majority of caselaw indicates that such regulations are not takings. *See, e.g.*, *36 Apartment Assocs., LLC v. Cuomo*, 860 F. App'x 215, 217 (2d Cir. 2021) (summary order) (concluding summarily that plaintiffs-appellants' argument that a COVID-19 regulation constituted a physical or regulatory taking was "without merit."); *TJM 64, Inc. v. Harris*, 526 F. Supp. 3d 331 (W.D. Tenn. 2021); *Case v. Ivey*, No. 2:20-CV-777-WKW, 2021 WL 2210589 (M.D. Ala., June 1, 2021), *appeal filed*, No. 21-12276 (11th Cir. July 2, 2021); *Underwood v. City of Starkville*, No. 1:20-CV-00085-GHD-DAS, 2021 WL 1894900 (N.D. Miss. May 11, 2021); *1600 Walnut Corp. v. Cole Haan Co. Store,* 530 F. Supp. 3d 555 (E.D. Pa. 2021); *MetroFlex Oceanside LLC v. Newsom*, 532 F. Supp. 3d 976 (S.D. Cal. 2021); *State v. Wilson*, 489 P.3d 925 (N.M. 2021); *Mission Fitness Ctr., LLC v. Newsom*, No. 2:20-CV-09824-CAS-KSx, 2021 WL 1856552 (C.D. Cal. May 10, 2021); *Amato v. Elicker*, 534 F. Supp. 3d 196 (D. Conn. 2021); *Northland Baptist Church of St. Paul v. Walz*, 530 F. Supp. 3d 790 (D. Minn. 2021), *aff'd*, ---F.4th---, 2022 WL 2167935 (8th Cir. 2022); *Flint v. Cnty. of Kauai*, 521 F. Supp. 3d 978 (D. Haw. 2021); *Daugherty Speedway, Inc v. Freeland*, 520 F. Supp. 3d 1070 (N.D. Ind. 2021); *Peinhopf v. Guerrero*, No. 20-00029, 2021 WL 218721 (D. Guam Jan. 21, 2021), *report and recommendation adopted*, No. 20-00029, 2021 WL 4972622 (D. Guam Feb, 5, 2021); *Our Wicked Lady LLC v. Cuomo*, No. 21-CV-0165 (DLC), 2021 WL 915033 (S.D.N.Y. Mar. 9, 2021); *TJM 64, Inc. v. Harris*, 475 F. Supp. 3d 828 (W.D. Tenn. 2020); *Blackburn v. Dare Cnty.*, 486 F. Supp. 3d 988 (E.D.N.C. 2020), *appeal filed*, No. 20-2056 (4th Cir. Oct. 2, 2020); *Oregon Rest. & Lodging Ass'n v. Brown*, ---F. Supp. 3d---, 2020 WL 6905319 (D. Or. 2020); *AJE Enter. LLC v. Justice*, No. 1:20-CV-229, 2020 WL 6940381 (N.D. W. Va. Oct. 27, 2020), *appeal dismissed*, No. 20-2256, 2021 WL 2102318 (4th Cir. Jan. 27, 2021) (order); *Bimber's Delwood, Inc v. James*, 496 F. Supp. 3d 760 (W.D.N.Y. 2020); *Luke's Catering Serv., LLC v. Cuomo*,

485 F. Supp. 3d 369 (W.D.N.Y., 2020); *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148 (S.D.N.Y. 2020), *appeal dismissed*, 860 F. App'x 215 (2d Cir. 2021) (mem. op.); *Lebanon Valley Auto Racing Corp. v. Cuomo*, 478 F. Supp. 3d 389 (N.D.N.Y., 2020); *Savage v. Mills*, 478 F. Supp. 3d 16 (D. Me., 2020); *PCG-SP Venture I LLC v. Newsom*, No. EDCV20-1138 JGB (KKx), 2020 WL 4344631 (C.D. Cal. June 23, 2020); *McCarthy v. Cuomo*, No. 20-CV-2124 (ARR), 2020 WL 3286530 (E.D.N.Y. June 18, 2020); *Alsop v. DeSantis*, No. 8:20-CV-1052-T-23SPF, 2020 WL 9071427 (M.D. Fla. Nov. 5, 2020); *but see Heights Apartments, LLC v. Walz*, 510 F. Supp. 3d 789 (D. Minn. 2020), *rev'd*, 30 F.4th 720 (8th Cir. 2022). Accordingly, even if Plaintiffs were permitted to amend their complaint, Defendants would be entitled to qualified immunity.

## IV. CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court.